# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 22, 2020       Decided April 13, 2021

No. 19-7129

RINAT AKHMETSHIN,
APPELLANT

v.

WILLIAM BROWDER,
APPELLEE

---

On Petition for Panel Rehearing

---

*Michael Tremonte* argued the cause for appellant. With him on the briefs was *Alexandra G. Elenowitz-Hess*.

*Michael J. Gottlieb* argued the cause and filed the brief for appellee. With him on the briefs was *Stephanie L. Miner*.

Before: TATEL and KATSAS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

2

## TABLE OF CONTENTS

OPINION ACCOMPANYING CERTIFICATION OF
QUESTIONS TO THE D.C. COURT OF APPEALS………………  3

ORIGINAL PANEL OPINION AND DISSENTING OPINION ……..  14

DEFENDANT-APPELLEE'S PETITION FOR PANEL
REHEARING OR REHEARING *EN BANC*………….……...……  37

PLAINTIFF-APPELLANT'S RESPONSE TO THE PETITION
FOR PANEL REHEARING AND REHEARING EN BANC……........  61

\* \* \* \* \*

EDWARDS, *Senior Circuit Judge*: In 2018, Appellant Rinat Akhmetshin, a resident of the District of Columbia ("District") and a dual citizen of the United States and the Russian Federation, filed a defamation action in the United States District Court for the District of Columbia against Appellee William Browder, a nonresident alien and citizen of the United Kingdom. The District Court had subject-matter jurisdiction on diversity-of-citizenship grounds. *See* 28 U.S.C. § 1332(a)(2).

Browder moved to dismiss the action on several grounds, including for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Because Browder made his allegedly defamatory statements while outside of the District of Columbia, Akhmetshin sought to establish personal jurisdiction over Browder under section 13-423(a)(4) of the District's long-arm jurisdiction statute. *See* D.C. CODE § 13-423(a)(4) (2001). According to Browder, however, the "government contacts exception" resulted in the exclusion of the vast majority of his conduct within the District from the personal jurisdiction calculus. *See Env't Rsch. Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C. 1976) (en banc). Akhmetshin countered by arguing that that the government contacts exception was inapplicable because Browder is a nonresident alien who lacks sufficient ties to the United States. The District Court agreed with Browder, dismissing the case on personal jurisdiction grounds and denying Akhmetshin's request for jurisdictional discovery. *See Akhmetshin v. Browder*, 407 F. Supp. 3d 11, 14 (D.D.C. 2019).

Akhmetshin appealed the District Court's decision. We vacated and remanded, holding that much of Browder's conduct within the District – including several activities that may not have included direct contact with agents, members, or

instrumentalities of the federal government – should have been included in the jurisdictional calculus. *Akhmetshin v. Browder*, 983 F.3d 542, 553-55 (D.C. Cir. 2020). In reaching that result, we declined to pass upon Akhmetshin's contention that the government contacts exception has limited applicability to nonresident aliens. *See id.* at 550-53. Instead, we vacated the District Court's order and remanded for jurisdictional discovery, noting that – in our view – the District Court had abused its discretion in applying an overbroad view of the government contacts exception. *Id.* at 557-58.

Judge Tatel dissented. He suggested that the better course would be to certify two questions to the District of Columbia Court of Appeals: First, what is the scope of the government contacts exception when it is applied to efforts to influence federal legislation and policy through the media? Second, may a nonresident alien invoke the exception? *See id.* at 563 (Tatel, J., dissenting).

Browder timely petitioned for panel rehearing and rehearing en banc. After considering his arguments and Akhmetshin's response, the panel has now decided to certify questions to the D.C. Court of Appeals regarding the circumstances in which the government contacts exception applies and whether nonresident aliens who are citizens only of foreign countries may invoke the government contacts exception.

Four questions are hereby certified for consideration by the D.C. Court of Appeals. The certified questions appear at the conclusion of part III of this opinion.

## I. A Brief Summary of the Facts and Proceedings Leading to Certification

The original decision issued by this court lays out in detail the context in which this case arose, including Browder's historical connections to the District and the procedural background of this litigation. *See Akhmetshin*, 983 F.3d at 547-50. We recount those details here only to the extent necessary to provide useful background to the D.C. Court of Appeals or to clarify any matters that might otherwise be confusing.

Browder is a financier who lives and works in the United Kingdom. Since 2009, he has traveled to the District on a number of occasions. Akhmetshin alleged (without discovery) that Browder has – while in the District – met with members of Congress and provided testimony before governmental bodies, appeared on television and podcasts, given interviews to publications, participated in panel discussions at nongovernmental organizations ("NGOs") and think tanks, promoted a book he authored, and attended personal events such as social dinners and a funeral. Both parties agree that this conduct has on a number of occasions related in some way to Browder's advocacy for measures holding human rights abusers in Russia and elsewhere accountable for their misdeeds. In particular, Browder expended extensive efforts in promoting passage of the Russia and Moldova Jackson-Vanik Repeal and Sergei Magnitsky Rule of Law Accountability Act of 2012 (the "Magnitsky Act"). *See* Pub. L. No. 112-208, 126 Stat. 1496 (2012). It appears, however, that substantial portions of Browder's conduct in the District – particularly after 2012 – did not include direct contacts with agents, members, or instrumentalities of the Federal Government.

On July 12, 2018, Akhmetshin filed a complaint against Browder in the District Court, alleging that Browder had defamed him in several July 2017 tweets and statements. Browder moved to dismiss the complaint for, among other things, lack of personal jurisdiction, asserting that his conduct within the District was not sufficient to satisfy any of the three "plus factors" required by D.C. Code § 13-423(a)(4). According to Browder, his contacts with the District were largely related to lobbying and advocacy efforts and, therefore, under the government contacts exception, could not be considered in determining whether he was subject to personal jurisdiction in the District. In response, Akhmetshin asserted that the government contacts exception could not apply to Browder because he is a nonresident alien who lacks sufficient ties to the United States. Akhmetshin also argued that Browder's contacts with the District satisfied any of the three plus factors in the long-arm statute. In the alternative, Akhmetshin requested limited jurisdictional discovery to further establish Browder's contacts with the District.

The District Court granted Browder's motion to dismiss on personal jurisdiction grounds, denied Akhmetshin's request for discovery, and dismissed the case without prejudice. *See Akhmetshin v. Browder*, 407 F. Supp. 3d 11, 14 (D.D.C. 2019). In analyzing whether Browder's contacts with the District constituted a "persistent course of conduct" under the District's long-arm statute, the District Court held that the government contacts exception applies to the conduct of nonresident aliens, relying in large part on a footnote from an opinion of this court, as well as prior District Court decisions. *See id.* at 23-24 (citing *Stabilisierungsfonds fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd.*, 647 F.2d 200, 205 n.11 (D.C. Cir. 1981); *LG Display Co. v. Obayashi Seikou Co.*, 919 F. Supp. 2d 17, 26-27 (D.D.C. 2013)). The District Court then excluded from the jurisdictional calculus virtually all of Browder's conduct

within the District – regardless of whether it included direct contacts with Federal Government agencies or officials – under the exception. *Id.* at 24-25, 24 n.15. In so doing, the court expressed its view that the government contacts exception operated to exclude from its inquiry all connections with the District made by "a non-resident defendant who 'concerns [himself] with federal legislation, regulations, and policies' in an effort to 'advance [the non-resident defendant's federal] policy agenda.'" *Id.* at 24 (alterations in original) (quoting *United Therapeutics Corp. v. Vanderbilt Univ.*, 278 F. Supp. 3d 407, 418 (D.D.C. 2017)).

Akhmetshin appealed and we reversed the District Court's decision to deny jurisdictional discovery. *See Akhmetshin*, 983 F.3d at 558. We explained that it was unclear to us whether, based on D.C. Court of Appeals precedent, the government contacts exception applies to nonresident aliens. *See id.* at 550-51. We concluded that, if we were forced to resolve that issue in order to dispose of the case, we would likely need to certify a question to the D.C. Court of Appeals. *See id.* at 553.

The panel majority thought that the nonresident alien issue might become moot, however. *See id.* The majority concluded that the District Court had applied an overly generous view of the government contacts exception in light of District law as set forth by the D.C. Court of Appeals in its seminal decision in *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808 (D.C. 1976) (en banc). *See Akhmetshin*, 983 F.3d at 553-55 (citing 355 A.2d at 813). Since the District Court had employed that overly generous view in denying jurisdictional discovery, this court held that such denial had been an abuse of discretion. *See id.* at 557-58. We also concluded that Akhmetshin had shown enough to obtain jurisdictional discovery upon remand. *See id.* at 558.

Judge Tatel dissented. In his view, *Environmental Research International* did not settle the question of whether the government contacts exception extends beyond direct contacts with federal government agencies and officials. *See id.* at 559-61 (Tatel, J., dissenting). Instead, he believed that "no 'controlling precedent' resolve[d] the question of whether the government contacts exception extends" as broadly as the District Court held and as Browder had argued before us. *Id.* at 560. Like the majority, he believed that there was genuine uncertainty "as to whether a foreign citizen may invoke the government contacts exception." *Id.* at 562. Believing both issues to be of "extreme public importance," *id.* at 558 (citation and quotation marks omitted), he urged the court to certify questions to the D.C. Court of Appeals, *id.* at 563.

After we issued our decision, Browder filed a petition for panel rehearing and rehearing en banc. Some of Browder's legal arguments now give us pause. First, he contends that the "purpose" of a defendant's entry into the District is the key to determining whether the government contacts exception applies to the defendant's activities once here. *See* Def.-Appellee's Pet. For Panel Reh'g or Reh'g *En Banc* ("Reh'g Pet.") at 10-12. And when a defendant enters the District with the purpose of contacting the Federal Government, other conduct during the same trip to the District should be excluded from the jurisdictional calculus, even if it does not itself involve direct contacts with the Government. *See id.* Relatedly, Browder argues that this "purpose" inquiry is dictated by our case law predating *Environmental Research International*, upon which the D.C. Court of Appeals has looked favorably. *See id.* at 14-17 (citing *Env't Rsch. Int'l*, 355 A.2d at 813 n.9)).

In light of Browder's arguments in his petition for rehearing, and Akhmetshin's strong responses to those

arguments, we have concluded that the matters in dispute are best resolved by the D.C. Court of Appeals. *See McKesson v. Doe*, 141 S. Ct. 48, 51 (2020) (per curiam) (holding that certification is appropriate when a "dispute presents novel issues of state law peculiarly calling for the exercise of judgment by the state courts" and when "certification would ensure that any conflict . . . between state law and the First Amendment is not purely hypothetical").

## II. The Uncertain Scope of the Government Contacts Exception

In *Environmental Research International*, the D.C. Court of Appeals, sitting en banc, explained that the government contacts exception is grounded "in the unique character of the District as the seat of national government and in the correlative need for unfettered access to federal departments and agencies for the entire national citizenry." 355 A.2d at 813. The court then added that "[t]o permit . . . courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum." *Id.* (citation omitted). Thus, "entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction." *Id.* (citation omitted).

"*Environmental Research International* indicates that the Court of Appeals viewed the government contacts exception as applying only to members of the '*national citizenry*.'" *Akhmetshin*, 983 F.3d at 550 (emphasis added) (quoting 355 A.2d at 813). "This suggests that the exception does not apply to nonresident aliens." *Id.* And other phrases indicate that the

exception applies only to *direct* contacts with the Federal Government and its agents, members, or instrumentalities. *See Env't Rsch. Int'l*, 355 A.2d at 813 (referring to "nonresidents whose *sole* contact . . . consists of *dealing with a federal instrumentality*" (emphases added)); *id.* (grounding the exception in the "need for . . . *access to federal departments and agencies*" (emphasis added)). However, the opinion might be read to say, as Browder suggests, that the dispositive question is the "purpose" for which "nonresidents" have entered the District. *See id.* On this view of the law, if the nonresident's purpose in entering the District is to have direct contact with the federal government, other activities undertaken while the defendant is here arguably might be excludable from the jurisdictional calculus.

Adding to the uncertainty in this area is that several decisions of the D.C. Court of Appeals since 1976 "have left the scope of the government contacts exception 'unsettled.'" *Akhmetshin*, 983 F.3d at 550 (first quoting *Companhia Brasileira Carbureto de Calicio v. Applied Indus. Materials Corp.*, 640 F.3d 369, 371 (D.C. Cir. 2011)); and then citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 786-87 (D.C. Cir. 1983) (addressing possible tension between Court of Appeals decisions on the government contacts exception)). In 1978, a panel of the D.C. Court of Appeals held "that the First Amendment provides the only principled basis" for the government contacts exception, with the exception's "premise" having shifted "solely to the First Amendment." *Rose v. Silver*, 394 A.2d 1368, 1374 (D.C. 1978). "And in 1990, in a decision responding to a certified question from this court, the Court of Appeals framed an inquiry regarding the government contacts exception as 'whether the defendants can assert a First Amendment interest . . . , thereby permitting invocation of the "government contacts" principle.'" *Akhmetshin*, 983 F.3d at 551 (alteration in original) (quoting *Lex Tex Ltd., Inc. v.*

*Skillman*, 579 A.2d 244, 249 (D.C. 1990)). If the exception applies only to a defendant who possesses cognizable First Amendment rights, it is not clear whether it applies to Browder. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990) (noting that "textual exegesis . . . suggests that 'the people' protected by the . . . First and Second Amendments . . . refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community"). Nor have we found a decision in which the D.C. Court of Appeals has applied the exception to a nonresident alien.

In sum, we have two broad and difficult issues before us: whether nonresident aliens may invoke the government contacts exception, and the scope of conduct to which it applies. Considering the arguments raised in the petition for rehearing, we are now convinced that District law in *both* spheres is "genuinely uncertain." *Companhia Brasileira*, 640 F.3d at 373 (quoting *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1303 (D.C. Cir. 2002)).

### III. The Certified Questions

Under D.C. Code § 11–723(a), the D.C. Court of Appeals may answer certified questions from this court if they involve "questions of law of the District of Columbia which may be determinative of [a] cause pending . . . as to which it appears . . . there is no controlling precedent in the decisions of the District of Columbia Court of Appeals." We have therefore certified questions to the Court of Appeals when it appears that "'District of Columbia law is genuinely uncertain' and the question[s] [are] of 'extreme public importance.'" *Companhia Brasileira*, 640 F.3d at 373 (quoting *Sturdza*, 281 F.3d at 1303).

For the reasons discussed above, we have no doubt that the legal questions at issue here admit of no easy answers. The law is therefore genuinely uncertain. We also believe that the questions posed by this case concern matters of great public importance. First, the nonresident alien issue "affects core First Amendment values because it is far from clear whether the right to petition the government extends to Browder as a noncitizen." *Akhmetshin*, 983 F.3d at 562 (Tatel, J., dissenting) (citations omitted). And while the record is silent as to the number of nonresident aliens who enter the District each year with the purpose of affecting federal policy, it seems likely that the number is not insignificant. Second, "lobbying" is "one of this city's major businesses," *id.* at 563, and the jurisdictional effect of advocacy efforts that do not involve direct contacts with the federal government may impact the degree to which visitors are willing to undertake such efforts moving forward. Phrased differently, nonresidents may elect to refrain from media, promotional, and academic activities within the District to advance their federal policy agendas if such activities make it more likely that they will be subjected to personal jurisdiction here.

Rather than "[s]peculate[e]" on these difficult and "novel issues of [District] law," *McKesson*, 141 S. Ct. at 51 (citation and quotation marks omitted), we certify the following questions to the District of Columbia Court of Appeals:

1. May nonresident aliens who are citizens only of foreign countries invoke the government contacts exception?

2. If the first question is answered in the affirmative, must those nonresident aliens possess cognizable rights pursuant to the First Amendment generally,

or any specific clause thereunder, in order to invoke the exception?

3. Does the government contacts exception extend to efforts to influence federal policy other than direct contacts with agents, members, or instrumentalities of the federal government?

4. If the third question is answered in the affirmative, what standard governs in determining whether activities not involving direct contacts with the federal government are covered under the exception?

If the Court of Appeals elects to take up these questions, it may, of course, "exercise [its] prerogative to frame the basic issues as [it] see[s] fit for an informed decision." *Delahanty v. Hinckley*, 564 A.2d 758, 760 (D.C. 1989) (citation omitted).

To facilitate review by the D.C. Court of Appeals, we have appended the following materials to this opinion: (1) our original panel opinion and dissenting opinion; (2) Browder's petition for panel rehearing or rehearing en banc; (3) Akhmetshin's response to Browder's rehearing petition; and (4) excerpts from the Joint Appendix submitted to this court related to Browder's conduct within the District of Columbia.

**ORIGINAL PANEL OPINION
AND DISSENTING OPINION**

Fed. Reg. at 65,446, 65,560–62, 65,601; *see also National Cable & Telecommunications Ass'n*, 555 F.3d at 1002 (finding that the agency complied with the "no broader than necessary" prong under intermediate scrutiny because it "carefully considered the differences between [ ] two regulatory approaches, and the evidence supports the [agency]'s decision").

[9]   Finally, the Association argues that we should subject the rule to strict scrutiny. In support, it relies on *Barr v. American Ass'n of Political Consultants (AAPC)*, —— U.S. ——, 140 S. Ct. 2335, 207 L.Ed.2d 784 (2020), in which the Court sustained a First Amendment challenge to a statute barring political speakers from making robocalls while allowing the government to use them for debt collection. But unlike the rule at issue here, that law was "directed at certain content," "aimed at particular speakers," and restricted political speech. *Id.* at 2347 (internal quotation marks omitted). Significantly for our purposes, moreover, the *AAPC* plurality made clear that the decision not only "fits comfortably within existing First Amendment precedent," but also is "not intended to expand existing First Amendment doctrine or to otherwise affect traditional or ordinary economic regulation of commercial activity." *Id.* Requiring hospitals to disclose prices before rendering services undoubtedly qualifies as "traditional or ordinary economic regulation of commercial activity." *Id.*

## V.

For the foregoing reasons, we affirm the district court's grant of summary judgment to the Secretary.

*So ordered.*



Rinat AKHMETSHIN, Appellant

v.

William BROWDER, Appellee

No. 19-7129

United States Court of Appeals, District of Columbia Circuit.

Argued September 22, 2020

Decided December 29, 2020

**Background:** District of Columbia resident, who was dual citizen of United States and Russian Federation, filed defamation action against lobbyist, who was nonresident of District and citizen of United Kingdom, claiming that lobbyist falsely stated that dual citizen was Russian spy. The United States District Court for the District of Columbia, Emmet G. Sullivan, J., 407 F.Supp.3d 11, granted lobbyist's motion to dismiss for lack of personal jurisdiction, and denied dual citizen's motion for jurisdictional discovery.

**Holdings:** The Court of Appeals, Edwards, Senior Circuit Judge, held that:

(1) lobbyist's contacts with District, other than contacts with federal government, could be considered in jurisdictional analysis;

(2) fiduciary shield doctrine did not apply to lobbyist's contacts related to his book;

(3) lobbyist's contacts did not satisfy two "plus factors" for long-arm jurisdiction; and

(4) record was incomplete as to third "plus factor" for long-arm jurisdiction; and

(5) precisely focused jurisdictional discovery was warranted.

Vacated and remanded.

Tatel, Circuit Judge, filed dissenting opinion.

**1. Courts ⬅️13.3(3, 11)**

Under District of Columbia's long-arm jurisdiction statute, any party over whom personal jurisdiction is sought must have satisfied one of three "plus factors" within the District: (1) regularly doing or soliciting business, (2) engaging in any other persistent course of conduct, or (3) deriving substantial revenue from goods used or consumed or services rendered. D.C. Code § 13-423(a)(4).

**2. Courts ⬅️13.3(4)**

Under the government contacts exception to the District of Columbia's long-arm jurisdiction statute, entries into the District by nonresidents for the purpose of contacting federal governmental agencies or instrumentalities do not factor into the jurisdictional calculus. D.C. Code § 13-423(a)(4).

**3. Constitutional Law ⬅️3964**
 **Federal Courts ⬅️2721, 3025(4)**

A personal jurisdiction analysis requires that a court determine whether (1) jurisdiction over a party is proper under the applicable local long-arm statute and (2) whether it accords with the demands of due process. U.S. Const. Amend. 14.

**4. Federal Courts ⬅️3581(4)**

Court of Appeals reviews dismissal of an action for lack of personal jurisdiction de novo.

**5. Federal Courts ⬅️2791**

The plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant.

**6. Federal Courts ⬅️3591**

Denial of jurisdictional discovery is reviewed for abuse of discretion.

**7. Courts ⬅️13.3(4)**

The government contacts exception to the District of Columbia's long-arm jurisdiction statute applies when nonresidents' sole contact with the District consists of dealing with a federal instrumentality. D.C. Code § 13-423(a)(4).

**8. Courts ⬅️13.3(4)**

The government contacts exception to the District of Columbia's long-arm jurisdiction statute finds its source in the need for unfettered access to federal departments and agencies. D.C. Code § 13-423(a)(4).

**9. Courts ⬅️13.3(4)**

Entry into the District by nonresidents for the purpose of contacting federal governmental agencies is the key to the analysis as to whether the government contacts exception to the District of Columbia's long-arm jurisdiction statute applies. D.C. Code § 13-423(a)(4).

**10. Courts ⬅️13.3(4)**

Under the government contacts exception to the District of Columbia's long-arm jurisdiction statute, only direct contacts with members, agents, or instrumentalities of the federal government may be excluded from the jurisdictional calculus. D.C. Code § 13-423(a)(4).

**11. Federal Courts ⬅️2744**

Nonresident lobbyist's contacts with District of Columbia, that were not direct contacts with federal government, could be included in jurisdictional analysis to determine whether he had sufficient contacts with District to support exercise of personal jurisdiction in defamation suit against him for allegedly falsely stating that dual citizen of United States and Russian Federation was Russian spy, under government exception to District's long-arm statute, including his attendance at reception

and funeral, book promotional appearances, discussions and speeches at think tanks, interviews in print and audio-visual media, and hiring of law firm; exception only allowed direct contacts with members, agents, or instrumentalities of federal government to be excluded from jurisdictional calculus. D.C. Code § 13-423(a)(4).

**12. Courts ⚖13.6(5)**

Under the "fiduciary shield doctrine," a defendant employee's acts and contacts carried out solely in a corporate capacity within a forum are removed from the jurisdictional analysis for the District of Columbia's long-arm jurisdiction statute. D.C. Code § 13-423(a)(4).

> See publication Words and Phrases for other judicial constructions and definitions.

**13. Courts ⚖13.6(5)**

There is no absolute fiduciary shield doctrine or a per se rule that an employee's acts in his official capacity may never give rise to personal jurisdiction over him under the District of Columbia's long-arm jurisdiction statute. D.C. Code § 13-423(a)(4).

**14. Federal Courts ⚖2744**

Fiduciary shield doctrine did not apply to categorically exclude from jurisdictional calculus nonresident lobbyist's contacts with District of Columbia related to sales and promotional events for his book, under District of Columbia's long-arm jurisdiction statute, in defamation suit against lobbyist who allegedly falsely stated that District resident was Russian spy, even though lobbyist was founder and chief executive officer of copyright owner for book, where lobbyist was at least partly acting in his individual capacity as author of book when promoting book in District. D.C. Code § 13-423(a)(4).

**15. Federal Courts ⚖2744**

Nonresident lobbyist's direct contacts with District of Columbia related to sales and promotional events for his book did not satisfy "plus factors" of regularly doing or soliciting business in District or deriving substantial revenue from goods used or consumed or services rendered in District, as would be required for exercise of personal jurisdiction, under District's long-arm statute, in defamation suit against lobbyist who allegedly falsely stated District resident was Russian spy, where publisher rather than lobbyist made sales decisions for book, lobbyist did not directly receive revenue from book sales, revenue from sales of book was de minimis, and lobbyist only made three book promotion appearances in District over span of months several years ago. D.C. Code § 13-423(a)(4).

**16. Courts ⚖13.3(3)**

The use of "regularly" to describe the type of contact contemplated indicates that the minimal contacts with the District of Columbia that are required for exercise of long-arm jurisdiction should at least be continuing in character. D.C. Code § 13-423(a)(4).

> See publication Words and Phrases for other judicial constructions and definitions.

**17. Courts ⚖13.3(3)**

The "plus factor" of persistent course of conduct in the District of Columbia, as required for exercise of personal jurisdiction over a nonresident, under District's long-arm jurisdiction statute, is not a particularly high bar, and it denotes connections considerably less substantial than those required to establish general, all purpose jurisdiction on the basis of doing business in the forum. D.C. Code § 13-423(a)(4).

### 18. Courts ⚯13.3(3)

The "plus factor" of persistent course of conduct in the District of Columbia, as required for exercise of personal jurisdiction over a nonresident, under District's long-arm jurisdiction statute, serves to exclude cases in which the in-forum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum. D.C. Code § 13-423(a)(4).

### 19. Federal Courts ⚯2744

Trial court's record was incomplete as to whether nonresident lobbyist's contacts with District of Columbia satisfied "plus factor" of persistent course of conduct in District, as would be required for exercise of personal jurisdiction over lobbyist, under District's long-arm statute, in defamation suit against lobbyist who allegedly falsely stated District resident was Russian spy. D.C. Code § 13-423(a)(4).

### 20. Federal Civil Procedure ⚯1267.1

Trial courts generally have broad discretion in ordering or denying discovery.

### 21. Federal Courts ⚯3565

A trial court by definition abuses its discretion when it makes an error of law.

### 22. Federal Courts ⚯3565

The abuse-of-discretion standard includes appellate review to determine that the trial court's discretion was not guided by erroneous legal conclusions.

### 23. Federal Civil Procedure ⚯1275.5

District of Columbia resident would be permitted to pursue precisely focused jurisdictional discovery aimed at addressing whether nonresident lobbyist engaged in persistent course of conduct within District, as would be required for exercise of personal jurisdiction, under District's long-arm statute, in defamation suit claiming that lobbyist falsely stated that resident was Russian spy, since lobbyist had significant contacts with District even excluding from jurisdictional analysis his direct contacts with federal government. D.C. Code § 13-423(a)(4).

———

Appeal from the United States District Court for the District of Columbia (No. 1:18-cv-01638)

Michael Tremonte argued the cause for appellant. With him on the briefs was Alexandra Elenowitz-Hess.

Michael J. Gottlieb, Washington, argued the cause and filed the brief for appellee. With him on the brief was Stephanie L. Miner, Syracuse, NY.

Before: TATEL and KATSAS, Circuit Judges, and EDWARDS, Senior Circuit Judge.

Dissenting opinion filed by Circuit Judge TATEL.

EDWARDS, Senior Circuit Judge:

On July 12, 2018, Appellant Rinat Akhmetshin, a resident of the District of Columbia ("District") and a dual citizen of the United States and the Russian Federation, filed a defamation action in the District Court against Appellee William Browder, a nonresident alien and citizen of the United Kingdom. *See* J.A. 7-20. The District Court had subject-matter jurisdiction on diversity-of-citizenship grounds. *See* 28 U.S.C. § 1332(a)(2).

Akhmetshin's complaint cites several incidents to support his claim of defamation: (1) two tweets posted by Browder in which he identified Akhmetshin as a "Russian GRU officer" and a "Russian intelligence asset"; (2) a statement published in *Business Insider* in which Browder described Akhmetshin as "a member of Putin's secret police"; and (3) a television interview during which Browder described

Akhmetshin as, "by all accounts, some kind of shady former Soviet spy, current spy operator in Washington." Browder moved to dismiss the action on several grounds, including under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. *See* J.A. 59. Because Browder made his allegedly defamatory statements outside of the District of Columbia, Akhmetshin sought to establish personal jurisdiction over Browder under section 13-423(a)(4) of the District's long-arm jurisdiction statute. D.C. CODE § 13-423(a)(4) (2001).

[1, 2] Section 13-423(a)(4) authorizes the "exercise [of] personal jurisdiction over a person" who has "caus[ed] tortious injury in the District of Columbia by an act or omission outside the District of Columbia." Any such party over whom personal jurisdiction is sought must have satisfied one of three "plus factors" *within the District. See Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987). These factors are "[1] regularly do[ing] or solicit[ing] business, [2] engag[ing] in any other persistent course of conduct, or [3] deriv[ing] substantial revenue from goods used or consumed, or services rendered." D.C. CODE § 13-423(a)(4). However, "entr[ies] into the District ... by nonresidents for the purpose of contacting federal governmental agencies [or instrumentalities]" do not factor into the jurisdictional calculus. *Env't Rsch. Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C. 1976) (en banc) (explaining the "government contacts exception").

The record in the case indicates that, since 2009, Browder has traveled to the District of Columbia on a number of occasions. While on these trips, he has, among other things, met with members of Congress and provided testimony before governmental bodies, appeared on television and podcasts, given interviews to publications, participated in panel discussions at nongovernmental organizations ("NGOs") and think tanks, and attended personal events such as social dinners and a funeral. *See, e.g.*, J.A. 197-98, 202, 203, 204, 206, 214, 235-36, 248, 249, 251, 333, 336. It is undisputed that Browder's visits to the District often have been related to his advocacy for measures holding human rights abusers in Russia accountable for their misdeeds. *See* J.A. 39-40, 149. Prior to 2012, Browder lobbied Congress for passage of the Russia and Moldova Jackson-Vanik Repeal and Sergei Magnitsky Rule of Law Accountability Act of 2012 (the "Magnitsky Act"). *See* Pub. L. No. 112-208, 126 Stat. 1496 (2012). After the passage of the Magnitsky Act in 2012, Browder's trips to the District continued, both to promote the Act and to participate in a variety of professional and social events. *See, e.g.*, J.A. 239-40.

The District Court granted Browder's motion to dismiss for lack of personal jurisdiction. *Akhmetshin v. Browder*, 407 F. Supp. 3d 11, 14 (D.D.C. 2019). The court agreed with Browder that virtually all of his contacts with the District were subject to the government contacts exception; the court additionally found that Browder's remaining contacts with the District, based on the then-existing record, were not sufficient for jurisdiction under the District's long-arm statute. *Id.* at 24-25. The District Court also denied jurisdictional discovery, as it believed that any additional contacts with the District that Akhmetshin might uncover would likely be excluded under the government contacts exception. *Id.* at 28.

Based on the current record, we cannot determine whether Browder's non-government contacts with the District satisfy any of the three "plus factors" required under the long-arm statute. The District Court relied on an overly broad construction of the government contacts exception in

granting judgment for Browder and denying jurisdictional discovery. Therefore, we have no sound basis upon which to credit the District Court's judgment. Accordingly, we are constrained to vacate the judgment under review and remand the case for jurisdictional discovery.

## I. BACKGROUND

### A. Browder's Background and Contacts with the District of Columbia

Browder is a financier who lives and works in the United Kingdom. *See* J.A. 34. In 1996, he founded Hermitage Capital Management ("Hermitage"), a hedge fund specializing in former Soviet markets. *See* J.A. 8, 10, 217. In 2008, Sergei Magnitsky, one of Hermitage's lawyers, allegedly discovered that Russian government officials and members of organized crime had used Hermitage portfolio companies to perpetrate a $230 million tax fraud scheme. *See* J.A. 39-40, 108. Magnitsky was then arrested by Russian authorities and, in November 2009, died in a Russian prison. *See* J.A. 39-40, 137.

After being notified of Magnitsky's death, Browder sought accountability for those he believed responsible. *See, e.g.*, J.A. 196-98. In the United States, his efforts took the form of lobbying and advocating for the Magnitsky Act, which authorizes the President of the United States to impose sanctions against individuals who were responsible for Magnitsky's death, who have benefitted financially from his death, or who were involved in the underlying tax fraud scheme. *See* Magnitsky Act §§ 404, 406. In June 2009, Browder testified before the Commission on Security and Cooperation in Europe (the "Helsinki Commission") – an independent commission of the federal government – regarding the circumstances of Magnitsky's detention. *See* J.A. 16. From 2010 through 2012, Browder met with members of Congress and their staffs, also testifying before various Congressional bodies. *See* J.A. 10, 16, 197-98. Those efforts culminated in the 2012 enactment of the Magnitsky Act. *See* J.A. 10.

Since then, according to Akhmetshin, Browder has visited the District a number of times. Those trips have included testimony before a Congressional committee on one occasion in 2015, as well as testimony before the Helsinki Commission and a separate Congressional committees on two separate trips in 2017. *See* J.A. 16-17. The trips have also included attendance at an April 2013 reception, *see* J.A. 184, 325-26, sitting for an interview published in *BBC News* magazine in December 2013, *see* J.A. 181, 211-33, attendance at a book release event in January 2014, *see* J.A. 184, 327-34, participation in an April 2015 panel discussion at the National Endowment for Democracy, *see* J.A. 181, 234-37, sitting for an interview published in June 2016 in *The American Interest*, *see* J.A. 181-82, 238-47, sitting for three interviews on two separate dates in July 2017 with cable news outlets and a podcast, *see* J.A. 182, 248-51, sitting for interviews on five separate dates in April, July, August, and November 2018 with television and print news outlets, *see* J.A. 182-83, 252-54, 256-62, and attendance at a funeral in the District in September 2018, *see* J.A. 184, 335-36. Browder also hired a law firm in the District in 2016 in connection with efforts to defend himself and the Magnitsky Act from detractors. *See* J.A. 264-71.

In 2015, Browder authored a book, *Red Notice*, describing his personal background, the circumstances surrounding Magnitsky's death, the passage of the Magnitsky Act, and subsequent developments. *See* J.A. 17, 413-15. Akhmetshin's defamation complaint refers to *Red Notice* as a "best-seller." Compl. ¶ 68, Joint Ap-

pendix ("J.A.") 18. Hermitage entities own and license the copyright to *Red Notice*, and they engaged Simon & Schuster, Inc. ("Simon & Schuster") to publish the book, which is sold in the District. *See* J.A. 372-73. According to one of Hermitage's directors, Browder "does not personally own any property rights in the book" and "has personally earned no revenues as a result of the sales of *Red Notice*." Decl. of Ivan Cherkasov ¶¶ 3, 6, J.A. 372-73. Nonetheless, in 2015, Browder made at least three appearances in the District at events promoting *Red Notice*. *See* J.A. 153, 203, 204.

**B. The Instant Case**

Over the last five years, Browder and Akhmetshin have found themselves increasingly at odds. *See* J.A. 11-14. These tensions generally relate to Akhmetshin's public advocacy contradicting Browder's version of the events that resulted in Magnitsky's death, including accusations that Browder and Magnitsky – not Russian government officials – perpetrated the underlying tax fraud. *See* J.A. 12-13. Akhmetshin's efforts on this front have included lobbying for the removal of Magnitsky's name from the Magnitsky Act. *See* J.A. 12.

On July 14, 2017, it was widely reported that Akhmetshin had attended a June 9, 2016 meeting with, among others, Donald Trump, Jr. in New York City, at which the Magnitsky Act had been discussed. *See* J.A. 14, 35, 90, 108. Shortly after the news broke, Browder posted two tweets identifying Akhmetshin as a "Russian GRU officer," Decl. of Melissa Shube, Ex. A, J.A. 88, and a "Russian intelligence asset," Decl. of Melissa Shube, Ex. B, J.A. 95. Each tweet linked to an online article reporting on the June 9, 2016 meeting and containing information on Akhmetshin's background. *See* J.A. 88-93, 95-105. An article published in *Business Insider*, also on

July 14, 2017, included the following quote from Browder: "So in my opinion you had a member of Putin's secret police directly meeting with the son of the future next president of the United States asking to change U[.]S[.] sanctions policy crucial to Putin." Decl. of Melissa Shube, Ex. C, J.A. 109. Four days later, during a television appearance, Browder described Akhmetshin as, "by all accounts, some kind of shady former Soviet spy, current spy operator in Washington." Compl. ¶ 51, J.A. 15.

On July 12, 2018, Akhmetshin filed a complaint against Browder in the District Court, alleging that Browder's two tweets, his statement to *Business Insider*, and his statement on television were defamatory. *See* J.A. 7-20. On November 30, 2018, Browder filed a Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See* J.A. 25. Regarding personal jurisdiction, Browder asserted that his conduct within the District was not sufficient to satisfy any of the "plus factors" required by D.C. Code § 13-423(a)(4). *See* J.A. 50-58. According to Browder, his contacts with the District were almost entirely related to lobbying and advocacy efforts and, therefore, under the government contacts exception, these contacts could not be considered in the calculus regarding whether he was subject to personal jurisdiction in the District of Columbia. *See* J.A. 50, 53-57.

Akhmetshin filed an Opposition to the Motion to Dismiss. *See* J.A. 127-79. On the personal jurisdiction issue, he argued that the government contacts exception had no play in the personal jurisdiction calculus because Browder is a nonresident alien who lacks sufficient ties to the United States. *See* J.A. 149-52. He also argued that Browder's contacts with the District

satisfied all three plus factors in the District's long-arm statute. *See* J.A. 153-56. In the alternative, Akhmetshin requested limited jurisdictional discovery to further establish Browder's contacts with the District. *See* J.A. 179.

On September 16, 2019, the District Court granted Browder's Motion to Dismiss for lack of personal jurisdiction, denied Akhmetshin's request for discovery, and dismissed the case without prejudice. *Akhmetshin*, 407 F. Supp. 3d at 14. The District Court applied the terms of the District's long-arm statute under D.C. Code § 13-423(a)(4) and determined that it could not exercise personal jurisdiction over Browder based on revenues coming from sales of *Red Notice* under the third plus factor because all revenues went to Simon & Schuster and Hermitage corporate entities, not Browder. *Id.* at 21-22. The District Court also found that "Akhmetshin's allegations fail to show that Mr. Browder conducted or solicited business in the District" sufficient to satisfy the first factor under the long-arm statute. *Id.* at 22.

The District Court then analyzed whether Browder's contacts with the District constituted a "persistent course of conduct" – the second plus factor under the District's long-arm statute. *Id.* at 22-25; *see* D.C. CODE § 13-423(a)(4). First, the District Court rejected Akhmetshin's argument that the government contacts exception does not apply to nonresident aliens. *Akhmetshin*, 407 F. Supp. 3d at 23-24. Second, the District Court excluded all of Browder's direct contacts with governmental actors from its jurisdictional calculus. *Id.* at 24. Third, the District Court also excluded from the jurisdictional calculus virtually all of Browder's other contacts with the District – including his media interviews and book promotion events – under the exception. *Id.* at 24-25, 24 n.15.

In so doing, the court expressed its view that the government contacts exception operated to exclude from the calculus all conduct within the District by "a non-resident defendant who 'concerns [himself] with federal legislation, regulations, and policies' in an effort to 'advance [the nonresident defendant's federal] policy agenda.'" *Id.* at 24 (alterations in original) (quoting *United Therapeutics Corp. v. Vanderbilt Univ.*, 278 F. Supp. 3d 407, 418 (D.D.C. 2017)).

Next, the District Court addressed Akhmetshin's claims that Browder "ha[d] traveled to the District on several occasions for certain engagements (*i.e.* dinner, reception, meetings, private event, and funeral) between 2009 and 2018." *Id.* at 25. Akhmetshin had also noted that Browder "retained a law firm with an office in the District, ... sent two demand letters to NBC Universal regarding a published article, and ... stated in a telephone conversation that he would pursue legal action against a museum located in the District." *Id.* The District Court concluded that these contacts did "not warrant the exercise of specific personal jurisdiction over a nonresident defendant." *Id.* The District Court thus determined that because "Akhmetshin ha[d] failed to demonstrate that Mr. Browder's other travel to the District was not merely sporadic or occasional[,] ... the Court [would] not exercise personal jurisdiction over Mr. Browder under D.C. Code § 13–423(a)(4)." *Id.*

The District Court also denied Akhmetshin's request for jurisdictional discovery. *Id.* at 26-28. According to the court, Akhmetshin had not "demonstrated a 'good faith belief' that Mr. Browder's personal appearances in the District would establish personal jurisdiction because 'the government contacts principle would exclude [them] from the personal jurisdiction calculus.'" *Id.* at 28 (alteration in original)

(quoting *NBC-USA Hous., Inc. Twenty-Six v. Donovan*, 741 F. Supp. 2d 55, 61 (D.D.C. 2010)). Thus, the District Court found that "Akhmetshin ha[d] failed to show that jurisdictional discovery [wa]s warranted" and dismissed the case. *Id.*

On October 11, 2019, Akhmetshin filed a timely notice of appeal to this court. He argues that the District Court erred in finding that it lacked personal jurisdiction over Browder, in denying jurisdictional discovery, and in dismissing the case rather than merely his complaint.

## II. ANALYSIS

### A. Standard of Review

[3] "A personal jurisdiction analysis requires that a court determine whether [1] jurisdiction over a party is proper under the applicable local long-arm statute and [2] whether it accords with the demands of due process." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995) (as amended July 28, 1995). The parties agree that the applicable long-arm statute is D.C. Code § 13-423. *See Crane*, 814 F.2d at 762.

[4–6] We review dismissal of an action for lack of personal jurisdiction *de novo*. *See FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008). The plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. *Id.* Denial of jurisdictional discovery is reviewed for abuse of discretion. *Id.*

### B. The Government Contacts Exception

In this case, the merits of Akhmetshin's arguments rest largely on the degree to which Browder's contacts in the District should be excluded from the jurisdictional calculus under the government contacts exception. Because we must apply District law in addressing this issue, we begin our analysis by examining the scope of the government contacts exception as enunciated by the District of Columbia Court of Appeals (the "Court of Appeals").

### 1. Development of the Government Contacts Exception and Applicability to Nonresident Aliens

In 1976, the Court of Appeals, sitting en banc, held that

> entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction.

*Env't Rsch. Int'l*, 355 A.2d at 813. The court explained that this "government contacts exception" is grounded in "the unique character of the District as the seat of national government and in the correlative need for unfettered access to federal departments and agencies for the entire *national citizenry*." *Id.* (emphasis added) (internal quotation marks omitted). The court added that "[t]o permit … courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum." *Id.*

The decision in *Environmental Research International* indicates that the Court of Appeals viewed the government contacts exception as applying only to members of the "national citizenry." *Id.* This suggests that the exception does not apply to nonresident aliens. Later panel decisions of the Court of Appeals, however, have left the scope of the government contacts exception "unsettled." *Companhia Brasileira Carbureto de Calicio v. Applied Indus. Materials Corp.*, 640 F.3d 369, 371

(D.C. Cir. 2011); *see Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 786-87 (D.C. Cir. 1983) (addressing possible tension between Court of Appeals decisions on the government contacts exception).

To complicate matters further, in 1978, a "decision of a D.C. Court of Appeals panel [appears to] have limited the government contacts exception to cases in which the contacts with the federal government were an exercise of First Amendment rights." *Companhia Brasileira*, 640 F.3d at 372 (citing *Rose v. Silver*, 394 A.2d 1368, 1372-74 (D.C. 1978)). And in 1990, in a decision responding to a certified question from this court, the Court of Appeals framed an inquiry regarding the government contacts exception as "whether the defendants can assert a First Amendment interest . . . , thereby permitting invocation of the 'government contacts' principle." *Lex Tex Ltd., Inc. v. Skillman*, 579 A.2d 244, 249 (D.C. 1990). If the government contacts exception applies only to defendants who possess cognizable First Amendment interests, its application to nonresident aliens such as Browder is uncertain. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 265, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990) (noting that "textual exegesis . . . suggests that 'the people' protected by the . . . First and Second Amendments . . . refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community").

We have found no case, nor has Browder directed us to one, in which the Court of Appeals has applied the government contacts exception to the conduct of nonresident aliens. Instead, Browder relies on two opinions from this court, issued after *Environmental Research International*, in cases in which a defendant was a nonresident alien. *See Stabilisierungsfonds fur*

*Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd.*, 647 F.2d 200 (D.C. Cir. 1981); *Donahue v. Far E. Air Transp. Corp.*, 652 F.2d 1032 (D.C. Cir. 1981). The decisions in both cases simply reference, but do not apply, the government contacts exception. *See Stabilisierungsfonds*, 647 F.2d at 205 n.11; *Donahue*, 652 F.2d at 1038 n.9. According to Browder, these decisions establish that the government contacts exception applies to nonresident alien defendants. We do not agree that the decisions go as far as Browder claims.

In *Stabilisierungsfonds*, we held that an Australian wine producer and its distribution subsidiary were subject to long-arm jurisdiction under D.C. Code § 13-423(a)(1) and (a)(4) as a result of wine sales in the District. *See* 647 F.2d at 205-06. In a footnote, we stated the following:

> Counsel for [the plaintiffs] noted at oral argument that [the Australian defendants] may have acted in the District in connection with their registration of [a trade]mark. The District of Columbia, however, has grafted a "governmental contacts" exception to its long-arm statute. That exception holds that the local courts do not exercise personal jurisdiction over a nonresident on the basis of activity in the District relating solely to dealings with the federal government. *We do not rest any part of our decision on the Australians' contacts with federal offices.*

*Id.* at 205 n.11 (emphasis added) (internal citation omitted). It is theoretically possible – as Browder urges – to read the last sentence of the footnote as an application of the government contacts exception to the conduct of nonresident alien defendants. In our view, however, the sounder reading is that the court took no position on the issue. The Court found that personal jurisdiction existed without regard to the nonresident aliens' government con-

tacts. *Id.* at 205-06. In other words, our statement at the end of the footnote appears to have been an observation about the general state of District law, rather than a rule we applied in that particular case.

In *Donahue*, which resulted from a series of consolidated suits related to an airplane crash in Taipei, we held that a Taiwanese airline was not subject to personal jurisdiction in Guam, Hawai'i, California, New York, or the District. *See* 652 F. 2d at 1033-34. While arguing that courts in Guam, Hawai'i, New York, and the District had general personal jurisdiction over the airline, plaintiffs "rel[ied] . . . solely upon a theory of 'aggregated contacts' with the United States as a whole." *Id.* at 1038. We rejected that basis for jurisdiction, explaining that it "ha[d] attracted only limited support in federal question cases" and "ha[d] made no mark at all in cases" arising under state law in federal courts. *Id.* at 1038-39.

During the court's discussion of the defendant's contacts with Guam, Hawai'i, New York, and the District, it was noted that plaintiffs believed the airline's interactions with the Civil Aeronautics Board, located in the District, should have factored into the jurisdictional calculus. *See id.* at 1038. In response, in a footnote, the court observed that "[d]ealings with the federal government, standing alone, do not provide a basis for District of Columbia exercise of personal jurisdiction over a nonresident." *Id.* at 1038 n.9 (citing *Env't Rsch. Int'l*, 355 A.2d at 813). Browder, again, relies on this footnote as conclusive evidence that we have applied the government contacts exception to the conduct of a nonresident alien defendant.

As with *Stabilisierungsfonds*, we do not believe this footnote carries the precedential weight that Browder urges. Unlike in *Stabilisierungsfonds*, we found in *Dona-*

*hue* that the District Court lacked personal jurisdiction over the defendant. *See id.* at 1039. But, as in *Stabilisierungsfonds*, that outcome did not depend on the government contacts exception. Instead, we believed jurisdiction did not exist in the District – or in Guam, Hawai'i, or New York – because "aggregated contacts" between different fora could not lead to general personal jurisdiction over a defendant in any one of them. *Id.* at 1038-39. Whether the airline's contacts with the Civil Aeronautics Board were excluded from the jurisdictional calculus was, therefore, immaterial in determining whether general personal jurisdiction over the airline existed in any United States court.

In sum, in neither *Stabilisierungsfonds* nor *Donahue* did this court unambiguously apply the government contacts exception to the contacts of nonresident alien defendants. Nor did we engage with the difficult question of whether the government contacts exception covers such defendants. As a result, these decisions establish no clear precedent regarding whether the government contacts exception applies to a nonresident alien.

Browder further notes that in several cases decided since *Environmental Research International*, the District Court appears to have assumed that the government contacts exception applies to the contacts of nonresident aliens. *See, e.g., LG Display Co. v. Obayashi Seikou Co.*, 919 F. Supp. 2d 17, 26-27 (D.D.C. 2013); *App Dynamic ehf v. Vignisson*, 87 F. Supp. 3d 322, 327-29 (D.D.C. 2015). He is correct. These decisions, however, do not establish that the Court of Appeals would hold that the government contacts exception applies to the contacts of nonresident aliens.

If Browder cannot take advantage of the government contacts exception because he is a nonresident alien, then it seems clear that his many contacts with the District

would be sufficient to establish personal jurisdiction under the District long-arm statute. It is significant, albeit not dispositive, that in several cases the District Court has consistently assumed that the government contacts exception applies to the contacts of nonresident aliens, our court has cited the exception without ever doubting its efficacy in cases involving nonresident aliens, and the D.C. Court of Appeals has never expressly indicated that the exception does not apply to nonresident aliens. And Browder compellingly argues that "nonresident aliens who travel to the District to advocate for the adoption of federal legislation do not (and should not) expect to be sued in the District for their extraterritorial acts." Br. for Def.-Appellee at 15. Nevertheless, we are reluctant to reach this conclusion because the Court of Appeals' decision in *Environmental Research International* indicates only that the government contacts exception applies to members of "the entire *national citizenry*," 355 A.2d at 813 (emphasis added), with no reference to nonresident aliens.

If the only dispositive legal question outstanding in this case was whether the government contacts exception applies to nonresident aliens, certification to the Court of Appeals likely would be appropriate. But there are other grounds that might dispose of this case without any need to determine whether the government contacts exception applies to nonresident aliens. In these circumstances, we believe that the wisest course for now is to simply assume, without deciding, that the government contacts exception applies to the contacts of nonresident aliens. In other words, we will assume that Browder's direct contacts with members, agents, or instrumentalities of the federal government, both before and after enactment of the Magnitsky Act, may be excluded from the jurisdictional calculus. There is nothing that compels a different approach at this stage of the proceedings.

While we "recognize that we are leaving certain legal questions ... unresolved[,] ... these issues may become moot" depending on what happens in this case moving forward. *See United States v. Todd*, 287 F.3d 1160, 1164-65 (D.C. Cir. 2002). Thus, as we explain below, we will remand the matter to the District Court for jurisdictional discovery. Then, using the proper legal standard for the application of the government contacts exception, the District Court will recalculate Browder's contacts with the District. The recalculation will determine whether, without regard to any actual government contacts, Browder's nonexcluded contacts within the District satisfy the District's long-arm statute. If the District Court's recalculation of the jurisdictional factors indicates that Browder is subject to personal jurisdiction under the District's long-arm statute, then we may not have to determine whether the government contacts exception applies to nonresident aliens.

## 2. The Limited Scope of the Government Contacts Exception

[7–10] Although there may be a question as to whether the government contacts exception extends to nonresident aliens, the meaning and scope of the exception are otherwise straightforward with respect to the matters at issue in this case. The District of Columbia Court of Appeals has made it clear that the government contacts exception applies when nonresidents' "*sole* contact with the District consists of *dealing with a federal instrumentality*." *Env't Rsch. Int'l*, 355 A.2d at 813 (emphases added). The court also stated that the exception "finds its source in the ... need for unfettered access to *federal departments and agencies*." *Id.* (emphasis

added). Thus, under the controlling District law, "entry into the District of Columbia by nonresidents *for the purpose of contacting federal governmental agencies is*" the key to the analysis. *Id.* (emphasis added). Based on this controlling precedent, only direct contacts with members, agents, or instrumentalities of the federal government may be excluded from the jurisdictional calculus. In our view, the scope of the government contacts exception goes no further than this.

Browder has not identified any controlling authority postdating *Environmental Research International* that applies the government contacts exception to conduct not involving direct contact with members of the federal government or government agencies. Instead, Browder relies heavily on two District Court cases for support. *See Inv. Co. Inst. v. United States*, 550 F. Supp. 1213, 1216-17, 1217 n.6 (D.D.C. 1982); *United Therapeutics Corp. v. Vanderbilt Univ.*, 278 F. Supp. 3d 407, 417-19 (D.D.C. 2017). These decisions cannot carry the day for Browder.

In *Investment Company Institute*, the District Court excluded a broker-dealer's application for membership in the National Association of Securities Dealers ("NASD") from the jurisdictional calculus. 550 F. Supp. at 1217. The NASD was a "self-regulatory trade association of the . . . securities industry" that was "registered with the [Securities and Exchange Commission]" and headquartered in the District. *Id.* at 1217 n.6. It is true, as Browder notes, that NASD was not technically an instrumentality of the federal government. However, "[s]ubmission to [NASD's] regulation [wa]s [an] alternative to direct regulation by the SEC." *Id.* (citing 15 U.S.C. § 78o-3; *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 692-93 (3d Cir. 1979)). An application to a trade association that Congress *explicitly authorized*

*to exercise regulatory authority* presents a significantly different question for purposes of the government contacts exception than Browder's post-2012 contacts with the District, which have included conduct such as interviews with media outlets and panel discussions at NGOs.

The situation in *United Therapeutics* is less clear-cut. In that case, Vanderbilt University's District-based Office of Federal Relations performed, among other things, lobbying and general advocacy work before federal officials on behalf of the university. *See United Therapeutics*, 278 F. Supp. 3d at 418. It also "work[ed] closely with many higher education associations and coalitions headquartered in [the District], . . . in tandem with other Tennessee colleges and universities . . . to advance its policy agenda," *id.* (internal quotation marks omitted), "host[ed] a two-day . . . Policy and Advocacy seminar . . . focuse[d] on the Office's federal policy advocacy work," *id.* at 419, and "r[an] an unpaid summer internship program for Vanderbilt students" focused on federal public policy, *id.* The District Court excluded such conduct from the jurisdictional calculus under the government contacts exception, as it "concern[ed] federal *public policy.*" *Id.* Browder argues that these activities were analogous to his general advocacy efforts in the District after enactment of the Magnitsky Act. We do not agree. The conduct at issue in *United Therapeutics* appears to have been more closely tied to "the unique character of the District as the seat of national government" than many of Browder's post-2012 activities in the District. *See Env't Rsch. Int'l*, 355 A.2d at 813.

In any event, even if *Investment Company Institute* and *United Therapeutics* stretch the limits of the government contacts exception, these decisions are not controlling precedent. Our research indicates that there is no published decision

from the D.C. Court of Appeals or from this court supporting Browder's position that the government contacts exception extends beyond what the court said in *Environmental Research International. See id.*

[11] With the correct standard in mind, we find that other than his direct contacts with the government, Browder's conduct in the District after 2012 – such as book promotional appearances, discussions and speeches at think tanks, and interviews in both print and audio-visual media – should be included in the jurisdictional calculus. The District Court's exclusion of those contacts under the government contacts exception was error.

Since the enactment of the Magnitsky Act, Browder's contacts with the District – based only on publicly available sources – have included attendance at an April 2013 reception, sitting for an interview published in December 2013, attendance at a book release event in January 2014, participation in an April 2015 panel discussion, three book events on separate dates in February and April 2015, sitting for an interview published in June 2016, sitting for three interviews on two separate dates in July 2017, sitting for interviews on five separate dates in April, July, August, and November 2018, and attendance at a funeral in the District in September 2018. *See* J.A. 180-84. He also hired a law firm in the District in 2016. *See* J.A. 264-71. This conduct should be factored into the jurisdictional calculus, as it did not consist of direct contact with members, agents, or instrumentalities of the federal government.

To hold otherwise would mean that a defendant who has even a single contact with the federal government in support of a policy agenda may then exclude *all* contacts with the District that can be somehow construed as efforts to advance that agenda. A defendant could make countless

trips to the District for purposes other than "contacting [the] federal government[ ]" while having those trips excluded from the jurisdictional calculus. *See Env't Rsch. Int'l*, 355 A.2d at 813. The breadth of such an exception, which would extend well beyond defendants "whose *sole* contact with the District consists of *dealing with a federal instrumentality*," would swallow the rule. *See id.* (emphases added). We therefore reject Browder's arguments in support of such a construction of the government contacts exception.

## C. Applying the District Long-Arm Statute and Jurisdictional Discovery

Having determined the correct scope of the government contacts exception, we turn to whether Browder's nonexcluded conduct within the District after 2012 satisfies the District's long-arm statute. The parties agree that Browder committed an act outside the District that allegedly caused injury inside the District. Thus, whether there is personal jurisdiction under the statute depends on whether Browder's conduct satisfies one of the plus factors. *See* D.C. CODE § 13-423(a)(4); *Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987).

### 1. The First and Third Plus Factors

Akhmetshin asserts that sales of *Red Notice* in the District constitute, under the first plus factor, regularly doing business in the District and, under the third plus factor, deriving substantial revenue from the District. *See* Br. for Pl.-Appellant at 10-11. Akhmetshin also asserts that Browder's promotional events for the book in 2015 constituted, under the first plus factor, regularly soliciting business within the District. *See* Br. for Pl.-Appellant at 10-11. We disagree.

[12] Preliminarily, there appears to be disagreement between the parties as to whether Browder's contacts related to *Red Notice* should be categorically excluded from the jurisdictional calculus because of the so-called "fiduciary shield." Under that doctrine, a defendant employee's "acts and contacts carried out solely in a corporate capacity" within a forum are removed from the jurisdictional analysis. *Flocco v. State Farm Mut. Auto. Ins. Co.*, 752 A.2d 147, 163 (D.C. 2000) (quoting *Wiggins v. Equifax Inc.*, 853 F. Supp. 500, 503 (D.D.C. 1994)). Akhmetshin argues that the doctrine cannot preclude consideration of Browder's *Red Notice*-related contacts with the District because Browder – as the founder and Chief Executive Officer of Hermitage – is more than a mere employee. *See* Br. for Pl.-Appellant at 11-13; Reply Br. for Pl.-Appellant at 11-13. Browder, for his part, asserts that "Akhmetshin's discussion of the fiduciary shield doctrine is … inapposite." Br. of Def.-Appellee at 25 (citation omitted).

[13, 14] Based on the current record, it is not clear to us that the fiduciary shield doctrine is relevant to this case. A panel of this court recently noted, in considering the applicability of the doctrine to another subsection of the District's long-arm statute, that "when District of Columbia courts discuss the fiduciary shield doctrine, they do so only in the context of construing what they perceive to be the outer limits of *the Due Process Clause*." *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 47 (D.C. Cir. 2020) (emphasis added) (citations omitted). In this case, by contrast, at issue is whether Browder's contacts satisfy the District's *statutory* requirements for the exercise of long-arm jurisdiction. Moreover, the Court of Appeals has "explicitly decline[d] to adopt … an absolute 'fiduciary shield' doctrine," or "a *per se* rule that an employee's acts in his official capacity may *never*

give rise to personal jurisdiction over him." *Flocco*, 752 A.2d at 163 n.20. And in this case, Browder – as the author of *Red Notice* – was, at least in part, acting in an individual capacity when promoting the book in the District. *See Daley v. Alpha Kappa Alpha Sorority, Inc.*, 26 A.3d 723, 728 n.3 (D.C. 2011) (holding the fiduciary shield doctrine inapplicable to "individual … officers and directors" of an organization's governing body who "were also in part acting in their individual capacities as … members" of that body when undertaking conduct within the District). Thus, Browder's in-forum conduct related to *Red Notice* is not categorically excluded from the jurisdictional calculus under the fiduciary shield doctrine.

[15] Nevertheless, even if such contacts are not subject to the fiduciary shield doctrine, they do not suffice to confer personal jurisdiction under the first or third plus factors. In *McFarlane v. Esquire Magazine*, which involved a magazine article, we explained that "[t]he writer is not the publisher; [the author]'s contacts must be assessed separately" for the purpose of establishing jurisdiction. 74 F.3d 1296, 1300 (D.C. Cir. 1996) (citation omitted). The same admonition applies here. Simon & Schuster, rather than Browder himself, makes the sales decisions for *Red Notice*, "including where to sell the book, how many copies each state or store receives, and how the book is advertised." Decl. of Ivan Cherkasov ¶ 4, J.A. 372. That the book is sold in the District does not, therefore, mean that Browder himself is regularly doing business here.

Similarly, Browder does not directly receive revenue from sales of *Red Notice* in the District. Such revenue goes to Simon & Schuster, as well as one of Hermitage's corporate entities. *See id.* at ¶ 6, J.A. 373. And the amount of revenue generated by sales of *Red Notice* in the District – per

sealed documents Browder submitted to the District Court – is *de minimis* for a book that is, in Akhmetshin's own words, a "best-seller." *See* Compl. ¶ 68, J.A. 18; *see also* Br. for Pl.-Appellant at 6 (describing *Red Notice* as a "bestselling book"); Reply Br. for Pl.-Appellant at 4 (same). Accordingly, based on the current record, we cannot say that Browder derives substantial revenue from sales of the book in the District.

[16] Akhmetshin also notes – and Browder does not contest – that, on at least three occasions in 2015, Browder appeared at events in the District to promote *Red Notice*. But such appearances, on their own, are not sufficient to establish that Browder was "*regularly*" soliciting business in the District under the first plus factor. *See* D.C. CODE § 13-423(a)(4) (emphasis added). As the Court of Appeals has explained, " '[t]he use of ... 'regularly' to describe the type of contact contemplated indicates that ... the minimal contacts with the District that are required should at least be continuing in character.' " *Parsons v. Mains*, 580 A.2d 1329, 1330 (D.C. 1990) (per curiam) (quoting *Sec. Bank, N. A. v. Tauber*, 347 F. Supp. 511, 515 (D.D.C. 1972)). Three appearances promoting a book over a span of months several years ago does not satisfy that requirement. *See id.* (holding that a "defendant's entry of an appearance as counsel in two or at most three matters over a ... period of ten years or longer" in the District was insufficient to establish jurisdiction under section 13-423(a)(4)).

We therefore agree with the District Court's conclusion that – based on the current record – neither the first nor third plus factors are satisfied. *See Akhmetshin*, 407 F. Supp. 3d at 21-22.

## 2. The Second Plus Factor

[17, 18] We turn now to the second plus factor, which focuses on whether

Browder has engaged in a "persistent course of conduct" in the District. This is not a particularly high bar, and it "denotes connections considerably less substantial than those required to establish general, 'all purpose' jurisdiction on the basis of 'doing business' in the forum." *Steinberg v. Int'l Crim. Police Org.*, 672 F.2d 927, 931 (D.C. Cir. 1981). Such a requirement serves "to exclude cases in which th[e in-forum] impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum." *Id.*

[19] According to the Court of Appeals, two or three trips to the District over the course of a decade likely would not constitute a persistent course of conduct. *See Parsons*, 580 A.2d at 1330. However, trips to the District once or twice a month for a period of years – depending on a defendant's conduct during them – might well suffice. *See Etchebarne-Bourdin v. Radice*, 754 A.2d 322, 325 & n.5 (D.C. 2000) (noting that a trial court in the District concluded that entrance into the District "between one and two times a month" for business purposes over a period of several years constituted a persistent course of conduct). Based on the record before us, Browder's conduct within the District appears to fall somewhere between these two bounds. That record, however, is incomplete.

## 3. Jurisdictional Discovery

[20–22] Trial courts generally have "broad discretion" in ordering or denying discovery. *See Jeffries v. Barr*, 965 F.3d 843, 855 (D.C. Cir. 2020) (quoting *In re Multi-Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C. Cir. 1981)). But a trial court "by definition abuses its discretion when it makes an error of law." *Koch v. Cox*, 489 F.3d 384, 388 (D.C. Cir. 2007) (quoting *In re: Sealed Case (Med. Rec-*

*ords)*, 381 F.3d 1205, 1211 (D.C. Cir. 2004)). Thus, "the 'abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.'" *Id.* (quoting *In re: Sealed Case (Med. Records)*, 381 F.3d at 1211).

[23] As discussed above, the District Court based its discovery decision on an incorrect view of the applicable law. According to the court, jurisdictional discovery was not warranted because the government contacts exception would remove virtually all of Browder's personal appearances in the District from the jurisdictional calculus. *Akhmetshin*, 407 F. Supp. 3d at 28. That conclusion was premised on an overly broad view of the government contacts exception. Even excluding his direct contacts with the federal government and its instrumentalities, Browder has had significant contacts with the District.

"[Akhmetshin] has pointed to links [Browder] has [had] with the District sufficient at least to permit further inquiry regarding personal jurisdiction, so that the statutory . . . questions can be resolved on a fuller record." *See Crane*, 814 F.2d at 760 (citation omitted). It is not clear "whether jurisdictional discovery will assist [Akhmetshin] on this score, but [he] is entitled to pursue precisely focused discovery aimed at addressing" whether Browder has engaged in a persistent course of conduct within the District. *See GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1352 (D.C. Cir. 2000).

### III. Conclusion

For the reasons set forth above, we vacate the judgment of the District Court, reverse the court's refusal to allow jurisdictional discovery, and remand the matter to allow the District Court to supplement the existing record. We are ordering "jurisdictional discovery to permit develop-

ment of the record on [Browder's] contacts with the District of Columbia." *Urquhart-Bradley*, 964 F.3d at 49. Following discovery, the District Court must determine whether Browder engaged in a persistent course of conduct sufficient to subject him to personal jurisdiction under the District's long-arm statute. If the District Court determines that Browder is subject to personal jurisdiction, the court may then consider Browder's motion to dismiss under Rule 12(b)(6) for failure to state a cause of action.

TATEL, Circuit Judge, dissenting:

The Supreme Court recently warned federal courts against "[s]peculat[ing]" about "novel issues of state law peculiarly calling for the exercise of judgment by the state courts." *McKesson v. Doe*, 592 U.S. ——, ——, 141 S.Ct. 48, 51, 208 L.Ed.2d 158 (2020) (per curiam) (internal quotation marks omitted). Such speculation, the Court explained, "'is particularly gratuitous when the state courts stand willing to address questions of state law on certification.'" *Id.* (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 79, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)). That is the case here. Pursuant to D.C. Code section 11-723(a), our court may certify "questions to the D.C. Court of Appeals when 'District of Columbia law is genuinely uncertain' and the question is of 'extreme public importance.'" *Companhia Brasileira Carbureto de Calicio v. Applied Industrial Materials Corp.*, 640 F.3d 369, 373 (D.C. Cir. 2011) (quoting *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1303 (D.C. Cir. 2002), *certified question answered*, 11 A.3d 251 (D.C. 2011)), *certified question answered*, 35 A.3d 1127 (D.C. 2012). In my view, the questions here satisfy both requirements and should be certified to the D.C. Court of Appeals.

## I.

The government contacts exception traces its roots to a series of D.C. Circuit decisions issued prior to enactment of the District of Columbia Court Reform and Criminal Procedure Act of 1970. In *Mueller Brass Co. v. Alexander Milburn Co.*, our court held that keeping an agent in the District of Columbia "to maintain contact with the Government agencies in respect to reports, allocations and directives relating to materials for production" did not amount to "doing business" under the relevant long-arm statute. 152 F.2d 142, 144 (D.C. Cir. 1945); *see also Fandel v. Arabian American Oil Co.*, 345 F.2d 87, 88–89 (D.C. Cir. 1965) (excluding the government-related activities of a District of Columbia office from the jurisdictional analysis because they did not constitute "doing business" under the long-arm statute); *Traher v. De Havilland Aircraft of Canada, Ltd.*, 294 F.2d 229, 230 (D.C. Cir. 1961) (per curiam) (concluding that service was properly quashed when the only contact with the District was the maintenance of a single agent "who serve[d] as a liaison or contact man with the United States Government"). We likened this to our decisions excluding out-of-town news gathering from the jurisdictional analysis. If having agents in the District for the purpose of news gathering qualified as jurisdictional contacts, we explained, " 'it would bring in nearly every important newspaper in the nation, and many foreign publishing corporations.' " *Mueller Brass Co.*, 152 F.2d at 143 (quoting *Neely v. Philadelphia Inquirer Co.*, 62 F.2d 873, 875 (D.C. Cir. 1932)).

After the newly-created D.C. Court of Appeals assumed responsibility for interpreting D.C. law, that court reaffirmed the government contacts exception in *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 813 (D.C. 1976) (en banc). There,

citing our pre-1970 decisions and sitting en banc, the court explained that "entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies [wa]s not a basis for the assertion of in personam jurisdiction." *Id.* The court grounded the exception "in the unique character of the District as the seat of national government and in the correlative need for unfettered access to federal departments and agencies for the entire national citizenry." *Id.* Allowing courts to assert personal jurisdiction when nonresidents' "sole contact with the District consist[ed] of dealing with a federal instrumentality," the court explained, not only would "pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum." *Id.* Accordingly, visits "to the District of Columbia to consult with officials of the EPA concerning the possibility of a grant" did not amount to transacting business under the long-arm statute. *Id.*

The first question in this case is whether the government contacts exception is limited to those who seek to influence federal legislation and policy through direct contacts with government officials, such as by visiting them in their offices, or whether it extends to those who likewise seek to influence federal policy but through such tried and true methods as press conferences, talk show appearances, or "book promotional appearances, discussions and speeches at think tanks, and interviews in both print and audio-visual media." Majority Op. at 555; *see Akhmetshin v. Browder*, 407 F. Supp. 3d 11, 24–25 (D.D.C. 2019) (finding that Browder's "media interviews" either "concerned the Magnitsky Act" or were "intended to challenge any efforts to repeal" the Act (internal quotation marks omitted)). According to my colleagues, the D.C. Court of Appeals resolved this very issue in *Environmental Research*. In sup-

port, they emphasize certain words and phrases used by the Court of Appeals—"sole," "dealing with a federal instrumentality," "for the purpose of contacting federal governmental agencies"—as well as that when the court referred to "unfettered access," it specified "to federal departments and agencies." Majority Op. at 553–54. "Based on this controlling precedent," the court concludes, "only direct contacts with members, agents, or instrumentalities of the federal government may be excluded from the jurisdictional calculus." Majority Op. at 554.

I beg to differ. "[A] judicial decision resolves only the case before it," *Spanski Enterprises, Inc. v. Telewizja Polska, S.A.*, 883 F.3d 904, 911 (D.C. Cir. 2018), and the only question before the court in *Environmental Research* was whether direct contacts, i.e., "consultation" with government officials, should be excluded from the jurisdictional analysis. Efforts to influence federal policy through media events were not involved, and nothing in the court's opinion—let alone the words my colleagues emphasize—even hints that the court meant to address such efforts, much less exclude them from the government contacts exception.

It is true, as the court points out, that "Browder has not identified any controlling authority postdating *Environmental Research International* that applies the government contacts exception to conduct not involving direct contact with members of the federal government or government agencies." Majority Op. at 554. But there is a very good reason for that. Post–*Environmental Research*, the D.C. Court of Appeals has heard not a single case where the party invoking the government contacts exception had, like Browder, traveled to Washington in an effort to influence federal legislation through media events. As in *Environmental Research*, every sub-

sequent case involved direct contacts with government officials: "negotiat[ions] with the FDA," *Rose v. Silver*, 394 A.2d 1368, 1369 (D.C. 1978), *reh'g en banc denied*, 398 A.2d 787 (D.C. 1979); "patent applications before the United States Patent and Trademark Office," *Lex Tex Ltd., Inc. v. Skillman*, 579 A.2d 244, 245 (D.C. 1990); and "petition[s] [to] the U.S. International Trade Commission," *Companhia Brasileira Carbureto De Calcio v. Applied Industrial Materials Corp.*, 35 A.3d 1127, 1132 (D.C. 2012). The same is true of our post–*Environmental Research* cases. None involved media events. They instead involved direct contacts: "personal appearances" before the Department of the Interior, *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983) (internal quotation marks omitted); a "letter" to a government official, *United States v. Ferrara*, 54 F.3d 825, 831 (D.C. Cir. 1995); "petitions" to a federal agency and hiring "a District of Columbia law firm," *Bechtel & Cole v. Graceland Broadcasting Inc.*, 18 F.3d 953 (D.C. Cir. 1994) (unpublished table decision); and "act[ing] in the District in connection with the[ ] registration of" a trademark, *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 205 n.11 (D.C. Cir. 1981). To be sure, "judicial opinions establish precedential principles that apply to materially similar factual scenarios arising in future cases." *Spanski Enterprises*, 883 F.3d at 911. But neither *Environmental Research* nor any later case, from either the D.C. Court of Appeals or our court, is "materially similar" to this case because none involved efforts to influence federal legislation through media events.

Contrary to the court, then, no "controlling precedent" resolves the question of whether the government contacts exception extends to those who travel to Washington to influence federal policy through media events. The issue, moreover, satis-

fies both of our requirements for certification. Because neither the D.C. Court of Appeals nor our court has ever squarely addressed the question, and because neither court has left a " 'discernible path for [us] to follow,' " *Dial A Car, Inc. v. Transportation, Inc.*, 132 F.3d 743, 746 (D.C. Cir. 1998) (quoting *Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 426 (D.C. Cir. 1988)), "the scope of the government contacts exception is genuinely uncertain," *Companhia Brasileira*, 640 F.3d at 373. And because those seeking to influence federal policy rely so heavily on contacting federal officials through the media—think MSNBC, Fox News, CNN, etcetera etcetera—the question is of "sufficient public importance." *Id.*

Of course, the D.C. Court of Appeals might well agree with my colleagues. But given the uncertainty of District law and the importance of this issue, that "choice [is] not ours to make." *Owens v. Republic of Sudan*, 864 F.3d 751, 811 (D.C. Cir. 2017), *certified question answered*, 194 A.3d 38 (D.C. 2018), *vacated and remanded on other grounds sub nom. Opati v. Republic of Sudan*, — U.S. ——, 140 S. Ct. 1601, 206 L.Ed.2d 904 (2020).

## II.

I would also certify the second question in this case: whether a foreign citizen like Browder can invoke the government contacts exception. *See* Majority Op. at 553 (explaining that if the court were to reach this issue, "certification to the Court of Appeals likely would be appropriate").

Recall that in *Environmental Research*, the D.C. Court of Appeals grounded the government contacts exception in both First Amendment and due process principles. But in a later case, *Rose v. Silver*, a panel of that court "conclude[d] that the First Amendment provides the only principled basis for exempting a foreign defendant from suit in the District of Columbia." 394 A.2d at 1374. The full court subsequently denied rehearing en banc. *Rose v. Silver*, 398 A.2d 787. As our court observed in *Naartex Consulting Corp. v. Watt*, *Rose* "appeared to limit the 'government contacts' exception to activities implicating [F]irst [A]mendment rights." 722 F.2d at 786; *see also Companhia Brasileira*, 640 F.3d at 372 ("[A] subsequent decision of a D.C. Court of Appeals panel may have limited the government contacts exception to cases in which the contacts with the federal government were an exercise of First Amendment rights.").

Relying on *Rose* and citing our cases, Akhmetshin argues that the government contacts exception does not apply to Browder because he "has no First Amendment right to petition the United States government given that he voluntarily relinquished his U.S. citizenship." Appellant's Br. 23. In *Naartex*, however, we said only that *Rose* "appeared" to limit the exception, not that it actually did, and we did so because, as with our court, a panel of the D.C. Court of Appeals has no authority to issue a decision that conflicts with an earlier decision, especially one issued by the en banc court. We explained:

> In denying rehearing *en banc* in the *Rose* case, the full court failed to explain or reconcile the apparent conflict with the *Environmental Research* opinion, one judge finding none, and two other judges calling for the explicit rejection of the panel opinion in *Rose*. Since that time, the court has failed to clarify any possible conflict. Inasmuch as the denial of rehearing is evidence that no irreconcilable tension exists between the *en banc* opinion and a subsequent panel opinion, and considering that a panel of the District of Columbia Court of Appeals is prohibited from issuing an opinion which conflicts materially with a pri-

or decision of the full court as this may be done only by the court sitting *en banc*, if it were necessary to determine what law controls today in the District of Columbia, we would still be hesitant to conclude that the clear holding against governmental contacts as a basis for personal jurisdiction in *Environmental Research* no longer controls.

Fortunately, if there is any tension between *Environmental Research* and *Rose*, we need not resolve it ....

*Naartex*, 722 F.2d at 786–87 (alteration omitted) (internal quotation marks omitted) (citations omitted). A later panel of the D.C. Court of Appeals noted much the same. *See Companhia Brasileira*, 35 A.3d at 1131 ("[S]ome of our decisions *may* have implicitly narrowed the scope of the government contacts doctrine by concluding that 'the First Amendment provides the only principled basis' supporting it." (emphasis added) (quoting *Rose*, 394 A.2d at 1374)). Although, as Browder points out, our court has previously mentioned the government contacts exception in "reference" to non-citizens, *see* Majority Op. at 551–52 (discussing the two cases upon which Browder relies), neither our court nor the D.C. Court of Appeals has ever squarely addressed whether a citizen of another country may invoke the exception.

Given this, and given the unresolved tension between *Environmental Research* and *Rose*, District of Columbia law is "genuinely uncertain" as to whether a foreign citizen may invoke the government contacts exception, "a question of state law that is vital to a correct disposition of the case before" us. *Tidler*, 851 F.2d at 426. Indeed, we have previously certified a different question to the D.C. Court of Appeals due to the very uncertainty that *Rose* created. *See Companhia Brasileira*, 640 F.3d at 373.

The question is also of "extreme public importance." *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 564 (D.C. Cir. 1993) (internal quotation marks omitted). For one thing, it implicates a potential conflict between two decisions of the D.C. Court of Appeals—a conflict only that court may resolve. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) ("[N]o division of this court will overrule a prior decision of this court ... [.] [S]uch result can only be accomplished by this court en banc." (footnote omitted)). Moreover, just as Browder has spent years seeking passage and enforcement of the Magnitsky Act, individuals and corporations throughout the world seek to influence U.S. legislation and policy. *See Companhia Brasileira*, 640 F.3d at 373 (concluding that the question to be certified was "of sufficient public importance because its resolution could affect numerous individuals and corporations that petition the federal government"); *Nationwide Mutual Insurance Co. v. Richardson*, 270 F.3d 948, 950 (D.C. Cir. 2001) (explaining that because the clause at issue "potentially affect[ed] the insurance coverage of most businesses in the District of Columbia," the question was "one of significant import to the public"), *certified question answered*, 826 A.2d 310 (D.C. 2003), *reh'g en banc granted, opinion vacated*, 832 A.2d 752 (D.C. 2003), *vacated pursuant to settlement*, 844 A.2d 344 (D.C. 2004). Lastly, the issue affects core First Amendment values because it is far from clear whether the right to petition the government extends to Browder as a non-citizen. *See, e.g., United States v. Verdugo-Urquidez*, 494 U.S. 259, 265, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990) (explaining that the Constitution's use of the phrase "the people" in the First Amendment "suggests that 'the people' protected by" that amendment "refers to a class of persons who are part of a national community or who have otherwise developed sufficient

connection with this country to be considered part of that community"); *DKT Memorial Fund Ltd. v. Agency for International Development*, 887 F.2d 275, 285 (D.C. Cir. 1989) (expressing skepticism that foreign alien organizations were "within the 'zone of interests to be protected or regulated by' " the First Amendment (quoting *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)).

### III.

It goes without saying that the pandemic ravaging our nation is having a profound impact on the issues in this case. Fewer individuals are traveling to Washington to visit members of Congress, much less to participate in media events. But we have a specific case before us—William Browder traveled to the District to meet with government officials and repeatedly returned to participate in a series of media events— and we must decide that case. In any event, someday the pandemic will end, and even though travel to Washington may never return to pre-pandemic levels, how the courts resolve the two issues in this case could significantly affect one of this city's major businesses: lobbying.

Accordingly, I would certify the following two issues to the D.C. Court of Appeals:

1. Does the government contacts exception extend to efforts to influence federal legislation and policy through the media and, if so, what standard should courts apply to determine which kinds of activities, ranging from press conferences aimed at specific legislation to general public advocacy, are covered?

2. May a citizen of a foreign country who is not a resident alien invoke the government contacts exception?

As in all certifications to the D.C. Court of Appeals, that court would "exercise [its] prerogative to frame the basic issues as [it] see[s] fit for an informed decision." *Delahanty v. Hinckley*, 564 A.2d 758, 760 (D.C. 1989) (internal quotation marks omitted).



**DEFENDANT-APPELLEE'S PETITION FOR PANEL
REHEARING OR REHEARING *EN BANC***

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

### Case No. 19-7129

RINAT AKHMETSHIN

Plaintiff-Appellant,

*- v. -*

WILLIAM BROWDER,

Defendant-Appellee.

On Appeal from the United States District Court
for the District of Columbia, No. 18-cv-1638
The Honorable Emmet G. Sullivan

## DEFENDANT-APPELLEE WILLIAM BROWDER'S
## PETITION FOR PANEL REHEARING OR REHEARING *EN BANC*

Michael J. Gottlieb
Stephanie L. Miner
WILLKIE FARR & GALLAGHER LLP
1875 K Street, NW
Washington, DC 20006
mgottlieb@willkie.com
Telephone: (202) 303-1000
Facsimile: (202) 303-2000

*Counsel for William Browder*

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................i

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION AND RULE 35 STATEMENT ...................................... 1

STATEMENT OF THE CASE........................................................................3

REASONS FOR GRANTING THE PETITION.........................................4

    I.      The Panel Materially Misread the Factual Record................................4

    II.    The Panel's "Direct Contact" Limitation Conflicts With Binding Precedents And Would Upend The Purpose Of The Government Contacts Exception.........................................................8

        A.    The "Direct Contact" Limitation Departs From The Holding And Purpose Of *Environmental Research*....................9

        B.    The "Direct Contact" Limitation Conflicts With the Supreme Court's *Noerr-Pennington* Doctrine.........................12

        C.    The "Direct Contact" Limitation Conflicts With This Court's Seminal Government Contacts Exception Precedents ...............................................................................14

CONCLUSION..........................................................................................17

CERTIFICATE OF COMPLIANCE.........................................................18

CERTIFICATE OF SERVICE ..................................................................19

ADDENDUM

*Akhmetshin v. Browder*,
    No. 19-7129 (D.C. Cir. Dec. 29, 2020) ......................................A1

Certificate As To Parties, Rulings, And Related Cases ......................A38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akhmetshin v. Browder,*
  407 F. Supp. 3d 11 (D.D.C. 2019)..................................................................3, 4, 8

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,*
  486 U.S. 492 (1988).............................................................................................13

*Companhia Brasileira Carbureto De Calcio v. Applied Indus.*
  *Materials Corp.,*
  35 A.3d 1127 (D.C. 2012) .............................................................................10, 11

*E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.,*
  365 U.S. 127 (1961)........................................................................................2, 13

*Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.,*
  355 A.2d 808 (D.C. 1976) .......................................................1, 9, 10, 11, 12, 16

*Everett v. Nissan Motor Corp. in U.S.A.,*
  628 A.2d 106 (D.C. 1993) ............................................................................10, 15

*Fandel v. Arabian American Oil Co.,*
  345 F.2d 87 (D.C. Cir. 1965).............................................................................15

*Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n,*
  663 F.2d 253 (D.C. Cir. 1981).............................................................................14

*Groop Internet Platform Inc. v. Psychotherapy Action Network,*
  No. CV 19-1854 (BAH), 2020 WL 353861 (D.D.C. Jan. 21, 2020) .................16

*Hughes v. A.H. Robins Co.,*
  490 A.2d 1140 (D.C. 1985) .................................................................................15

*Inv. Co. Inst. v. United States,*
  550 F. Supp. 1213 (D.D.C. 1982)........................................................................16

*Jung v. Ass'n of Am. Med. Colls.,*
  300 F. Supp. 2d 119 (D.D.C. 2004).....................................................................16

*Mueller Brass Co. v. Alexander Milburn Co.,*
152 F.2d 142 (D.C. Cir. 1945)................................................................14

*Nader v. Democratic Nat'l Comm.,*
567 F.3d 692 (D.C. Cir. 2009)................................................................14

*Sierra Club v. Tenn. Valley Auth.,*
905 F. Supp. 2d 356 (D.D.C. 2012)........................................................16

*United Therapeutics Corp. v. Vanderbilt Univ.,*
278 F. Supp. 3d 407 (D.D.C. 2017)....................................................8, 16

*World Wide Minerals Ltd. v. Republic of Kazakhstan,*
116 F. Supp. 2d 98 (D.D.C. 2000)..........................................................16

**Rules**

Fed. R. App. P. 35(a)(1)-(2)......................................................................2

Fed. R. App. 40(a)(2) ................................................................................1

## INTRODUCTION AND RULE 35 STATEMENT

Defendant-Appellee William Browder respectfully requests panel rehearing and rehearing *en banc* of the December 29, 2020 decision vacating the District Court's Order dismissing for lack of personal jurisdiction under the "government contacts exception" to the D.C. long-arm statute (the "Decision"). *See* Addendum ("A") at 1–27.

Panel rehearing is appropriate under Fed. R. App. 40(a)(2) because the decision misapprehended the factual record regarding Browder's contacts in the District after 2012, and misinterpreted the governing law applicable to those contacts. Relying on the "appearance" of those contacts rather than an examination of the record, the panel erroneously presumed that Browder's visits to the District after 2012 were not tied to the "unique character of the District as a seat of the national government." (A19). But the record is unequivocal that Browder's visits were intended to influence federal government policy, and also that his post-2012 visits included numerous direct interactions with the federal government.

Rehearing *en banc* (or panel rehearing) is necessary to correct the panel's misreading of the government contacts exception as articulated by the D.C. Court of Appeals in *Environmental Research International, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 813 (D.C. 1976). Departing from the holding and facts of *Environmental Research*, as well as the prior precedents of this Court on

which *Environmental Research* relied, the panel erroneously asserted that *only* "direct contacts" with the federal government are subject to the exception. (A18). The panel's "direct contact" rule misapprehends the nature of lobbying, which typically involves interaction with the media, think tanks, and non-governmental bodies as part of advocates' efforts to foment government action. Absent rehearing, the panel's rule threatens to inhibit the exercise of public participation rights, and would risk converting the District into a national judicial forum by authorizing expansive jurisdiction over the extraterritorial acts of nonresidents (including U.S. citizens) who travel to D.C. to petition the government.

The panel's "direct contact" requirement conflicts with longstanding Supreme Court precedent holding that *indirect* efforts to persuade the federal government, including appeals made via mass media, are entitled to the same protections as advocates' *direct* government engagements. *See E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 140 (1961). The panel's imposition of a "direct contact" limitation also conflicts with this Court's seminal cases establishing the government contacts exception. Rehearing *en banc* is necessary to ensure the uniformity of this Court's precedents on this question of exceptional importance. *See* Fed. R. App. P. 35(a)(1)-(2).

## STATEMENT OF THE CASE

Browder is a British national who resides in the United Kingdom and is a leading global human rights and anti-corruption advocate. *Akhmetshin v. Browder*, 407 F. Supp. 3d 11, 14–15 (D.D.C. 2019) (JA376–77).[1]  Browder advocated for Congress to enact the Sergei Magnitsky Act in 2012, and he continued his public policy advocacy in the District after 2012, including by urging Congress to enact the 2016 Global Magnitsky Human Rights Accountability Act.  After 2016, Browder urged Congress and the Justice Department to enforce the Foreign Agents Registration Act against persons (including Plaintiff) who on behalf of Russian interests were lobbying in the U.S. (without registering) against the Magnitsky legislation; at that same time, Browder also fought efforts to repeal the Act or rename the 2016 legislation, and petitioned the Executive Branch to designate persons for sanctions under the 2012 and 2016 Magnitsky Acts.  *Id.* at 24–25 (JA400–01); Compl. ¶¶ 22–24, 26, 32–37, ECF No. 1 (JA10–13); ECF No. 20 at 8 (JA41). Browder's human rights advocacy necessitated his visits to D.C. given the District's unique role as the seat of the national government—the visits served no commercial purpose and Browder earned no money from his advocacy in the District.

On July 12, 2018, Plaintiff-Appellant Rinat Akhmetshin filed this defamation suit against Browder for commenting on public reports from NBC News and the

---

[1] "JA" refers to the Joint Appendix submitted with the original appeal.

Associated Press addressing Akhmetshin's ties to Russian intelligence. Compl. ¶¶ 5, 33 (JA7, 12). Akhmetshin did not sue NBC News or any other party besides Browder, and conceded that the complained acts occurred outside the District.

The District Court granted Browder's motion to dismiss under Rule 12(b)(2), finding, *inter alia*, that the court lacked personal jurisdiction over Browder under the government contacts exception. *Akhmetshin*, 407 F. Supp. at 14, 28 (JA377, 411). The court analyzed each of Browder's alleged contacts and concluded that they all fell within the exception, including meetings and public appearances concerning the Magnitsky Act, appearances relating to the book *Red Notice*, which "were closely related to [Browder's] advocacy of the Magnitsky Act and his lobbying efforts," *id.* at 24 n.15 (JA400), and media appearances in the District which related to his testimony before the government concerning the Magnitsky Act, and were "intended to challenge any efforts to repeal that federal law" *id.* at 24 (JA401). On December 29, 2020, the panel vacated and remanded over Judge Tatel's dissent. (A1–27).

## REASONS FOR GRANTING THE PETITION

### I.     The Panel Materially Misread the Factual Record

The panel's core error was its incorrect assumption that Browder's visits to the District after 2012 were not "closely tied" to the District's status as the seat of national government. (A19). The panel described the "appearance" of the contacts as described by Akhmetshin, but did not review the actual evidence cataloguing

Browder's visits to the District. The record unequivocally shows not just that all of the alleged contacts involved Browder's policy advocacy in the District, but also that many of the contacts actually did include "direct contact with members, agents, or instrumentalities of the federal government." (A20).

The panel assumed that Browder's post-2012 contacts involved "professional and social events," (A3), but the record does not support that presumption. All of the events and interviews cited by the panel, (A20), concerned the 2012 and 2016 Magnitsky Acts. The panel ignored that Browder's advocacy for federal government policy continued with his advocacy for the 2016 Global Magnitsky Act, notwithstanding that those efforts are described in detail in many of Plaintiff's submitted exhibits. *See, e.g.,* (JA114, 116–17, 203, 239–40, 257–62, 328–33). Similarly, Browder fought Akhmetshin's efforts to remove Magnitsky's name from the 2016, rather than 2012, Magnitsky Act. *See* (JA114, 116–17, 239–40).

The record clearly establishes that Browder's visits after 2012 continued to be aimed at influencing federal government policy. *See supra,* at 3–4. For example, the panel relied upon Plaintiff's description of a June 2016 interview, (A20), but that very article describes Browder's then-current government advocacy efforts in the District, *see* (JA239–47), including meetings with Members of Congress regarding the campaign to repeal the Magnitsky Act. (JA240). As of 2016, Browder was "here

in Washington" to attend "meetings with all the top senators and members of the House to talk about Russia and to talk about Magnitsky." (JA244).

The panel misread most of the record evidence on which it relied, including seven public events and ten media interviews cited as part of the panel's holding. *See* (A19–20). As for the events, the panel held that *none* involved "direct contact with" the government, (A20), but in fact *five of the seven events[2] did,* including: (1) an April 2013 reception "marking the passage of the Magnitsky Act" involving Magnitsky Act Co-Sponsor Rep. Jim McGovern (JA326); (2) an April 2015 panel discussion including "Members of Congress and other dignitaries" (JA236); (3) an event the panel called a book event, which was in fact a Hudson Institute event entitled "The Global Magnitsky Act: Ending Impunity for Human Rights Abusers" and involved Rep. McGovern and staff from the House Foreign Relations Committee (JA203); (4) an event at the McCain Institute involving three members of Congress[3]; and (5) the funeral of Magnitsky Act Co-Sponsor Sen. John McCain, attended by dozens of government officials (JA336).

---

[2] The record is silent as to whether any government officials participated in the other two events, and the panel erred in presuming that none did.

[3] Akhmetshin provided no Exhibit documenting this event below or before this Court. Given its reliance on the event despite this, the Court may take judicial notice of the Members of Congress who in fact attended. *See* Event Summary, https://www.mccaininstitute.org/events/book-discussion-with-bill-browder/.

With respect to the interviews, according to Plaintiff's own exhibits, Browder gave three of them (in July of 2018) ***while he was out of the District*** (in any event, the interviews involved the Magnitsky Acts). *See* (JA253–55). As for the others, a 2013 interview cited by the panel, (A20), describes Browder's extensive efforts at the time to engage with Congress and the Executive Branch. (JA212–21). A 2016 interview, (A20), details Browder's work (extending into 2016) lobbying Congress on the Global Magnitsky Act. (JA257–62). The 2017 interviews, (A20), described contemporaneous testimony Browder gave to the Senate Judiciary Committee regarding Akhmetshin's efforts to repeal the Magnitsky Act. (JA248–49). As for the two 2018 interviews that did occur in D.C., the April interview discussed Browder's work promoting Magnitsky Acts around the world and urging U.S. government action, and the November interview directly discussed implementation of the Global Magnitsky Act. (JA252, JA256–62).

The panel asserted that Browder's interviews with media outlets were insufficiently "tied to the unique character of the District as the seat of national government," (A19 (internal quotation marks omitted)), but the interviews demonstrate that they were part and parcel of Browder's advocacy efforts. The interviews that Browder gave in the District occurred here because the District is the seat of national government, and the work that Browder describes in those interviews is indistinguishable from Vanderbilt University's "federal policy advocacy work"

-7-

that was at issue in *United Therapeutics Corp. v. Vanderbilt University,* 278 F. Supp. 3d 407, 417–19 (D.D.C. 2017).

Absent rehearing, Browder will suffer substantial prejudice on remand. The District Court carefully evaluated the factual record including considering each of the contacts described above. *See Akhmetshin*, 407 F. Supp. at 24–25 (D.D.C. 2019) (JA400–02). This Court's mandate that the District Court treat all of the above events as not involving "direct contacts" with the government, and unrelated to D.C. role as the seat of national government, would force the District Court to disregard Plaintiff's own evidence. *Supra,* at 4–7. No such instruction is necessary. On rehearing, this Court can reassess the existing record evidence, the appropriate standard under *Environmental Research,* and whether jurisdictional discovery is warranted given Plaintiff's legal burden to establish a basis for exercising jurisdiction.

## II. The Panel's "Direct Contact" Limitation Conflicts With Binding Precedents And Would Upend The Purpose Of The Government Contacts Exception.

Rehearing *en banc* (or alternatively by the panel) is necessary to avoid a conflict between the panel's decision and settled precedents of the Supreme Court and this Court. The panel's "direct contact" requirement is contrary to the holding and purpose of *Environmental Research*. The panel's rule also undermines settled

law defining the scope of the Petition Clause of the First Amendment, as well as this Court's foundational precedents regarding the government contacts exception.

### A. The "Direct Contact" Limitation Departs From The Holding And Purpose Of *Environmental Research*

The Decision correctly observes that under *Environmental Research*, "'entry into the District of Columbia by nonresidents *for the purpose of contacting federal government agencies* is' the key to the analysis" of the applicability of the government contacts exception. (A18) (italics in original) (citing *Envtl. Rsch.*, 355 A.2d at 813). However, in the next sentence, the panel erroneously states that *Environmental Research* restricted the application of the exception to "only direct contacts with members, agents, or instrumentalities of the federal government." *Id.* at 17–18.

The panel's "direct contacts" requirement was not part of the court's holding in *Environmental Research*. Instead, the language *appears* to derive from a sentence that, at most, described the court's rationale for adopting its rule.

> To permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum.

*Envtl. Rsch.*, 355 A.2d at 813. That statement articulates *one* scenario in which jurisdiction would be inappropriate, but the court never purported to define that

-9-

scenario as the *exclusive* one to which the exception applies. *See* (A30–31) (Tatel, J., dissenting) ("nothing in the court's opinion—let alone the words my colleagues emphasize—even hints that the court meant to address such efforts, much less exclude them from the government contacts exception").

The panel's "direct contact" requirement would change the result of *Environmental Research* itself. The defendants in *Environmental Research* had "direct contacts" with federal officials, but those were not their "only" contacts with the District—to the contrary, the defendants' initial contact with the District was their private contract with a "professional consulting firm incorporated" in the District, which performed contractual services for defendants in D.C. *Envtl. Rsch.*, 355 A.2d at 810. Had *Environmental Research* intended to announce a "sole" and "direct contact" requirement, the mere existence of a contract for the performance of services in D.C. would have prevented defendants from satisfying that requirement. That was not the rule then, and it should not be so now. What matters is the *purpose* of defendants' *entry*. *See Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.*, 35 A.3d 1127, 1133 (D.C. 2012) ("we have held, 'entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction'"); *Everett v. Nissan Motor Corp. in U.S.A.*, 628 A.2d 106, 110 (D.C. 1993) (same). And where a nonresident enters D.C. with such a purpose, no decision

prior to the panel's had ever held that indirect efforts to influence the government that occur during such an entry can establish a "persistent course of conduct" for jurisdictional purposes.

The D.C. Court of Appeals has cautioned against carve outs that, "if applied loosely, could largely negate the government contacts exception" and cause an "unrelenting wave of litigation." *Companhia*, 35 A.3d at 1133–34 (internal citations omitted). Yet by artificially constraining the government contacts exception to "direct contacts," the Decision would "pose a threat to free public participation in government, [and] also would threaten to convert the District of Columbia into a national judicial forum." *Envtl. Rsch.*, 355 A.2d at 813. Under the panel's rule, advocates of all stripes who are invited to engage with the U.S. Government in D.C. would expose themselves to civil liability for doing nothing more than discussing their meetings and policy objectives with the press. Worse, the "direct contact" rule means that *anything* a nonresident does outside of the halls of government while in D.C. could subject that nonresident to civil jurisdiction here.

A "direct contact" rule will inevitably lead to litigation against unsuspecting visitors to the District. Because nearly all visitors to D.C. engage in *some* non-governmental contacts during their visits, future plaintiffs will be able to establish jurisdiction by itemizing nonresidents' social visits and commercial transactions (travel, meals, entertainment) that take place during visits to engage with the federal

government. That risk is heightened in cases like this one, where jurisdiction is predicated upon a nonresident's extraterritorial acts. Such litigation risks deterring public policy advocates, including U.S. citizens, from traveling to D.C. to engage in the "public participation" *Environmental Research* sought to encourage.

The panel appeared to have concerns about interpreting the government contacts exception in a manner that would "swallow the rule." (A21). But the appropriate limiting principle is not an artificial directness requirement—it is the purpose inquiry supplied by *Environmental Research*. *See* 355 A.2d at 813. That rule does not permit a foreigner to engage in limitless contacts with the District immune from jurisdiction. Under *Environmental Research,* visits must be connected to the District's "unique" status as the seat of government, and each entry must be for the purpose of interacting with the government. *Id.*

### B. The "Direct Contact" Limitation Conflicts With the Supreme Court's *Noerr-Pennington* Doctrine

Since the District of Columbia was established as the seat of national government, public policy activists from around the world have traveled here to advocate for the enactment, strengthening, and implementation of federal laws and regulations. And for decades, citizen and noncitizens alike—from civil rights advocates in the 1960s to families of victims of terrorist attacks and school shootings—have coupled their visits to Congress and the Executive with simultaneous media events to enhance the efficacy of their advocacy. In the 1960s,

the Supreme Court established the principle that *indirect* efforts to persuade the federal government, including appeals made via mass media, are inseparable from advocates' *direct* government engagements. *See E. R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 143 (1961).

The panel acknowledged that the government contacts exception exists to provide breathing space for the exercise of the right to petition government under the First Amendment, (A12), yet its "direct contacts" limitation stands in plain conflict with the Supreme Court's articulation of that right. In *Noerr,* the Supreme Court interpreted the Petition Clause as extending to "a publicity campaign to influence governmental action." 365 U.S. at 143. The Supreme Court immunized railroads from antitrust liability because their activities independent of any government action—including the use of "speeches, newspaper articles, editorials, magazine articles, memoranda and" more—were "incidental" to their "efforts to influence the passage and enforcement of laws" and epitomized a "classic attempt to influence legislation by a campaign of publicity." *Id.* at 142 (citations and internal quotation marks omitted). Later precedents recognized that there is no relevant distinction between indirect and "direct petitioning of government officials, for *Noerr* itself immunized a form of indirect petitioning." *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 503 (1988) (internal quotation marks omitted); *see id.* at 499, 510 (protecting efforts to influence "governments through direct

lobbying, publicity campaigns, and other traditional avenues of political expression" including those "directed at the general public"). Likewise, this Court has held that a "genuine attempt to secure governmental action," including via advocacy in the media, is "securely within the protection of *Noerr*." *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 663 F.2d 253, 262, 257 (D.C. Cir. 1981).[4]

*Noerr* and its progeny foreclose the panel's distinction between a nonresident's "direct" and "indirect" efforts to petition government. Rehearing is necessary to avoid divorcing the government contacts exception from the very constitutional right it is designed to protect.

## C. The "Direct Contact" Limitation Conflicts With This Court's Seminal Government Contacts Exception Precedents

*En banc* rehearing is also warranted because the panel's "direct contact" test departs from this Court's prior articulation of the government contacts exception. In *Mueller Brass Co. v. Alexander Milburn Co.*, 152 F.2d 142, 144 (D.C. Cir. 1945), this Court considered whether personal jurisdiction could be exercised over a foreign company that established a D.C. office for the purpose of engaging with the federal government. *Id.* at 143–44. Despite the fact that doing so would necessarily require numerous transactions, over many years, with private companies and individuals

---

[4] The rationale of *Noerr-Pennington* extends beyond antitrust cases to the substantive scope of the Petition Clause right under the First Amendment. *Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 696 (D.C. Cir. 2009).

(e.g., signing leases, paying utilities, and hiring employees), *Mueller Brass* held that the purpose of those offices exempted those otherwise commercial contacts from the jurisdictional calculus under the District's long-arm statute. *Id.*

Following *Mueller Brass*, this Court continued to apply the government contacts exception based upon the *purpose* of the office, and did not ask whether the company's "sole contact" with the District was communication with federal officials.[5]  In *Fandel v. Arabian American Oil Co.*, 345 F.2d 87 (D.C. Cir. 1965), this Court applied the government contacts exception to a foreign corporation that established a local office in the District, despite recognizing that the office engaged in significant activity *apart from* interactions with the U.S. Government. *Id.* at 89. *Fandel* excluded from the jurisdictional calculus the foreign corporation's "continuous and ponderable physical presence" in the District, including maintaining an office with a significant monthly payroll, and engaging in efforts to maintain relationships with "educational and international organizations, private and public," and attending "social" events with other "American oil companies." *Id.* at 88–89.  If the defendant oil company's "social" visits and non-governmental

---

[5] The D.C. Court of Appeals has also applied the government contacts exception to commercial offices established in the District for the *purpose* of engaging with the U.S. Government, even where such offices rely upon numerous contacts with non-governmental entities. *See, e.g., Everett*, 628 A.2d at 109–10; *Hughes v. A.H. Robins Co.*, 490 A.2d 1140, 1145 n.4 (D.C. 1985).

contacts were excluded from the jurisdictional calculus in *Fandel*, there is no justification for holding Browder accountable for nearly identical types of contacts—unlike the Arabian American Oil Company, Browder has never operated an office or any kind of for-profit business in D.C. The panel's "direct contact" rule also would effectively overrule many district court decisions that, following *Mueller Brass* and *Fandel*, have applied the government contacts exception to contacts with D.C.-based trade associations and other non-governmental organizations.[6]

The panel appears to have deemed all decisions pre-dating *Environmental Research* to be irrelevant. (A18). But not only does *Fandel* remain binding precedent, it was cited approvingly in *Environmental Research* in the footnote that provided the authorities in support of the court's holding. 355 A.2d at 813 n.9. In sum, *Environmental Research* affirmed this Court's decision in *Fandel*. This Court

---

[6] *See, e.g.*, *Groop Internet Platform Inc. v. Psychotherapy Action Network*, No. CV 19-1854 (BAH), 2020 WL 353861, at *6 (D.D.C. Jan. 21, 2020) (membership in non-government entity trade association); *United Therapeutics*, 278 F. Supp. at 418 (University office that worked "with other non-governmental organizations" and hosted seminars and a summer internship program); *Sierra Club v. Tenn. Valley Auth.*, 905 F. Supp. 2d 356, 363 (D.D.C. 2012) (corporate office that included "continuous and deep involvement with this District – hiring and paying staff, communicating with citizens and officials here and advocating for [plaintiff's] interests"); *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 139 (D.D.C. 2004) (travel to the District for the purpose of fulfilling membership obligations in non-profit founded to work for reform in medical education); *World Wide Minerals Ltd. v. Republic of Kazakhstan*, 116 F. Supp. 2d 98, 105 (D.D.C. 2000) (membership in various trade associations which held conferences in the District); *Inv. Co. Inst. v. United States*, 550 F. Supp. 1213, 1217 & n.6 (D.D.C. 1982) (interactions with non-governmental organizations, including trade associations).

-16-

should grant rehearing *en banc* to avoid overruling or undermining these longstanding decisions *sub silentio*.

## CONCLUSION

For the foregoing reasons, Browder respectfully submits that the Petition should be granted.

January 12, 2021            Respectfully Submitted,

*/s/ Michael J. Gottlieb*
Michael J. Gottlieb
Stephanie L. Miner
WILLKIE FARR & GALLAGHER LLP
1875 K Street, NW
Washington, DC  20006
mgottlieb@willkie.com
Telephone:  (202) 303-1000
Facsimile:  (202) 303-2000

*Counsel for William Browder*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), undersigned counsel certifies that this brief:

(i)     complies with the type-volume limitation of 32(a)(7)(B) because it contains 3,815 words, excluding the parts of the brief exempted by Rule 32(f) and Circuit Rule 32(e)(1); and

(ii)    complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 2013 and is set in Times New Roman font in a size equivalent to 14 points or larger.

Dated:  January 12, 2021                    */s/ Michael J. Gottlieb*
                                             Michael J. Gottlieb

# CERTIFICATE OF SERVICE

I hereby certify that all participants in this appeal are registered CM/ECF users and that service will be accomplished electronically through the Court's CM/ECF system today, January 12, 2021.


Dated:  January 12, 2021      */s/ Michael J. Gottlieb*
             Michael J. Gottlieb

**PLAINTIFF-APPELLANT'S RESPONSE TO THE
PETITION FOR PANEL REHEARING
AND REHEARING *EN BANC***

**ORAL ARGUMENT HELD ON SEPTEMBER 22, 2020**

# United States Court of Appeals for the District of Columbia Circuit

## No. 19-7129

RINAT AKHMETSHIN,

*Plaintiff-Appellant,*

v.

WILLIAM BROWDER,

*Defendant-Appellee.*

-------------------------------

*On Appeal from the United States District Court for the District of Columbia in No. 1:18-cv-01638-EGS, Hon. Emmet G. Sullivan, U.S. District Judge*

## PLAINTIFF-APPELLANT'S RESPONSE TO THE PETITION FOR PANEL REHEARING AND REHEARING EN BANC

MICHAEL TREMONTE
ALEXANDRA G. ELENOWITZ-HESS
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
(fax) 212-202-4156
mtremonte@shertremonte.com
ahess@shertremonte.com
*Counsel for Plaintiff-Appellant*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rules 15(c)(3) and 28(a)(1), Akhmetshin submits this Certificate as to Parties, Rulings, and Related Cases.

## 1.     Parties, Intervenors, and Amici Curiae

Petitioner is William Browder, who is the Defendant-Appellee in this case. Respondent is Rinat Akhmetshin, who is Plaintiff-Appellant in this case.

## 2.     Ruling Under Review

The ruling at issue is the panel's decision in *Akhmetshin v. Browder*, No. 19-7129 (D.C. Cir. Dec. 29, 2020) (A1-27).

## 3.     Related Cases

This case has not previously been before this or any other court. Counsel for Appellant are not aware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................. iv

INTRODUCTION ........................................................................................... 1

LEGAL STANDARD ...................................................................................... 2

ARGUMENT .................................................................................................. 3

I.    THE COURT SHOULD DENY BROWDER'S PETITION FOR
      REHEARING *EN BANC* .................................................................... 3

      A.    The Panel Decision Was Correct Under Applicable Law ...................... 3

            1.    The Panel Majority Applied the Government Contacts
                  Exception Consistent with the District of Columbia's and
                  This Court's Precedent ........................................................... 3

            2.    Browder's Argument Regarding the *Noerr-Pennington*
                  Doctrine Should Be Deemed Waived ..................................... 8

            3.    Even if the Argument Is Not Waived, the *Noerr-Pennington*
                  Doctrine Is Not Applicable to This Case ............................... 9

      B.    The Petition Does Not Otherwise Present a Question of
            Exceptional Importance Under Federal Law .................................... 12

            1.    An *En Banc* Court Cannot Resolve the Remaining
                  State Law Question .............................................................. 12

            2.    Resolution of the State Law Question Would Be Premature ... 13

            3.    Browder's "Slippery Slope" Argument Is Unavailing ............. 14

II.   THE COURT SHOULD DENY BROWDER'S PETITION FOR
      PANEL REHEARING ...................................................................... 15

CERTIFICATE OF COMPLIANCE .......................................................................17

CERTIFICATE OF SERVICE ..............................................................................18

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Hela v. Trump*,
 972 F.3d 120 (D.C. Cir. 2020)....................................................................14

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
 486 U.S. 492 (1988)............................................................................ 10, 11

*Andrx Pharm., Inc. v. Biovail Corp. Int'l*,
 256 F.3d 799 (D.C. Cir. 2001)......................................................................9

*Banneker Ventures, LLC v. Graham*,
 798 F.3d 1119 (D.C. Cir. 2015)...................................................................10

*Barwick v. U.S., Dep't of Interior*,
 No. 89-5478, 1991 WL 65477 (D.C. Cir. Mar. 21, 1991)............................13

*Bechtel & Cole v. Graceland Broad. Inc.*,
 18 F.3d 953 (D.C. Cir. 1994).......................................................................4

*Chaidez v. United States*,
 568 U.S. 342 (2013)....................................................................................9

*Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*,
 923 F.3d 1141 (D.C. Cir. 2019)...................................................................15

*Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.*,
 35 A.3d 1127 (D.C. 2012) ............................................................................4

*Companhia Brasileira Carbureto de Calicio v. Applied Indus. Materials Corp.*,
 640 F.3d 369 (D.C. Cir. 2011)....................................................................13

*Crane v. Carr*,
 814 F.2d 758 (D.C. Cir. 1987)..............................................................5, 14

*CTS Corp. v. E.P.A.*,
    759 F.3d 52 (D.C. Cir. 2014)......................................................................10

*Envt'l Res. Int'l, Inc. v. Lockwood Greene Engineers, Inc.*,
    355 A.2d 808 (D.C. 1976) ..........................................................................4

*Everett v. Nissan Motor Corp. in U.S.A.*,
    628 A.2d 106 (D.C. 1993) ..........................................................................6

*Fandel v. Arabian Am. Oil Co.*,
    345 F.2d 87 (D.C. Cir. 1965).............................................................. 5, 6, 7

*IGEN Int'l, Inc. v. Roche Diagnostics GmbH*,
    335 F.3d 303 (4th Cir. 2003) .....................................................................10

*In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*,
    751 F.3d 629 (D.C. Cir. 2014)....................................................................2

*Jenkins v. Tatem*,
    795 F.2d 112 (D.C. Cir. 1986)....................................................................2

*Layug v. Barr*,
    No. 91-5232, 1992 WL 311224 (D.C. Cir. Oct. 14, 1992) ......................3, 15

*McKesson v. Doe*,
    141 S.Ct. 48 (2020)...................................................................................12

*Mueller Brass Co. v. Alexander Milburn Co.*,
    152 F.2d 142 (D.C. Cir. 1945)..................................................................5, 6

*Nader v. Democratic Nat. Comm.*,
    567 F.3d 692 (D.C. Cir. 2009)...................................................................10

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014)................................................................................8, 9

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993)...................................................................................11

*Rose v. Silver*,
394 A.2d 1368 (D.C. 1978) ..................................................................13

*Steinberg v. Int'l Criminal Police Org.*,
672 F.2d 927 (D.C. Cir. 1981)................................................................7

*United States House of Representatives v. Mnuchin*,
969 F.3d 353 (D.C. Cir. 2020)................................................................2

*United States v. Naranjo*,
254 F.3d 311 (D.C. Cir. 2001)................................................................9

*United States v. Philip Morris USA Inc.*,
566 F.3d 1095 (D.C. Cir. 2009)............................................................11

*United States v. Philip Morris USA, Inc.*,
337 F. Supp. 2d 15 (D.D.C. 2004)........................................................11

*Whelan v. Abell*,
48 F.3d 1247 (D.C. Cir. 1995)..............................................................11

**Statutes**

D.C. Code § 13-423(a)(4) ......................................................................3

**Rules**

D.C. Circuit Rule 15(c)(3) ...................................................................... i

D.C. Circuit Rule 28(a)(1) ...................................................................... i

Fed. R. App. P. 40(a)(2)..........................................................................3

Fed. R. Civ. P. 35(a)................................................................................3

**INTRODUCTION**

William Browder is an American-born financier who renounced his American citizenship to avoid paying U.S. taxes, but who regularly avails himself of the resources of the District of Columbia—appearing in person, on television, and on radio to tout his financial acumen and enhance his personal brand as an expert on United States-Russia relations.

Notwithstanding his persistent course of conduct in the District of Columbia, Browder claims that he enjoys absolute immunity from suit in this District because all of his contacts here are in some way related to his lobbying for the Sergei Magnitsky Rule of Law Accountability Act of 2012 (the "Magnitsky Act"), and thus, by operation of the government contacts exception to the District's long-arm statute, his extensive activities in the District count for nothing in the jurisdictional analysis. The district court erroneously agreed, refused Respondent's request for jurisdictional discovery, and granted Browder's motion based on an erroneous view of the law and entirely on Browder's own account of his local contacts. However, on December 29, 2020, the Panel vacated the judgment of the district court, reversed its refusal to allow jurisdictional discovery, and remanded the matter to allow the district court to supplement the existing record, and to rule again on Browder's personal jurisdiction motion and, if necessary, on Browder's Rule 12(b)(6) motion to dismiss. On January 12, 2021, Browder filed the instant petition.

Browder's petition for rehearing *en banc*/panel rehearing should be denied as Browder has failed to identify a basis for this Court's review. First, he does not cite any controlling authority that the Panel may have overlooked. There is no question as to the scope of the government contacts exception to this District's long-arm statute: it "consist[s] of direct contact with members, agents, or instrumentalities of the federal government," A20. Under this standard, Browder's repeated travel to this District to appear on television and radio, give magazine interviews, promote his book, and attend private events cannot be characterized as government contacts and "should be included in the jurisdictional calculus." *Id.* Second, it would be premature to resolve any remaining legal questions raised in the Panel's decision at this juncture. Should the district court find on remand (after jurisdictional discovery) that it has personal jurisdiction under the D.C. long-arm statute, any outstanding constitutional question will be moot.

**LEGAL STANDARD**

It is well-established that "[r]ehearing en banc should be rare," *United States House of Representatives v. Mnuchin*, 969 F.3d 353, 357 (D.C. Cir. 2020) (Griffith, J., dissenting from denial of *en banc*), and the standards for granting an *en banc* proceeding "are demandingly high," *Jenkins v. Tatem*, 795 F.2d 112, 114 (D.C. Cir. 1986). Such review "is reserved for 'question[s] of exceptional importance' or to preserve 'uniformity of the court's decisions.'" *In re Long-Distance Tel. Serv.*

*Fed. Excise Tax Refund Litig.*, 751 F.3d 629, 636 (D.C. Cir. 2014) (quoting Fed. R. Civ. P. 35(a)). Similarly, panel rehearing is not appropriate in the absence of "points of law or fact . . . the court previously overlooked or misapprehended." *Layug v. Barr*, No. 91-5232, 1992 WL 311224, at *1 (D.C. Cir. Oct. 14, 1992) (quoting Fed. R. App. P. 40(a)(2)).

## ARGUMENT

## I. THE COURT SHOULD DENY BROWDER'S PETITION FOR REHEARING *EN BANC*

### A. The Panel Decision Was Correct Under Applicable Law

#### 1. The Panel Majority Applied the Government Contacts Exception Consistent with the District of Columbia's and This Court's Precedent

Application of the government contacts exception is "straightforward with respect to the matters at issue in this case," A17; namely, Browder's conduct in this District should be factored into the "persistent course of conduct" jurisdictional calculus under D.C. Code § 13-423(a)(4) unless it "consist[s] of direct contact with members, agents, or instrumentalities of the federal government," A20. Under this standard, Browder's repeated travel to this District to appear on television and radio, give magazine interviews, promote his book, and attend private events cannot be characterized as government contacts and "should be included in the jurisdictional calculus." A20.

The Panel's holding is consistent with this Circuit's and District of Columbia

3

precedent. In *Bechtel & Cole v. Graceland Broad. Inc.*, 18 F.3d 953 (D.C. Cir. 1994), a panel of this Court explicitly held that "discretionary" conduct "not dependent on 'the unique character of the District as the seat of national government' . . . fall[s] outside the protective scope of the government contacts doctrine." *Id.* at 953 (quoting *Envt'l Res. Int'l, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 813 (D.C. 1976)). This holding is consistent with the D.C. Court of Appeals' decision in *Environmental Research*, on which it relies, which "made it clear that the government contacts exception applies when nonresidents' '*sole* contact with the District consists of dealing with a federal instrumentality.'" A17 (quoting *Envt'l Res. Int'l*, 355 A.2d at 813); *see also Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.*, 35 A.3d 1127, 1131 (D.C. 2012) (same).

Here, Browder's appearances on television and radio, his participation in magazine interviews, and his attendance at social and business events in this District were the very definition of "discretionary."[1] The fact that Browder may also have

---

[1] A review of the entirety of the governments contacts case law in both this Circuit and in the D.C. Court of Appeals reveals that the only types of "uniquely governmental activities" that courts in this Circuit have found to qualify under the government contacts doctrine are: (1) directly lobbying federal departments or agencies; (2) being a member of a federal department or agency; (3) attending meetings at, or communicating with, federal departments and agencies; (4) contacting an attorney related to a company's business or litigation with a federal agency; (5) keeping an office in the District for the sole purpose of maintaining contact with federal departments and agencies; (6) accepting money or business contracts from a federal department or agencies; or (7) membership in a trade

had meetings with federal departments or agencies in the same trip that he engaged in such "discretionary" conduct does not insulate these activities from the jurisdictional analysis. Rather, as the Panel did, a court must consider each contact with the District individually, including over the course of a single trip to the District. *See, e.g., Crane v. Carr*, 814 F.2d 758, 764 (D.C. Cir. 1987) (remanding case for jurisdictional discovery so plaintiff could "seek a more detailed delineation of [defendant's] activities in the District"). Otherwise, all conduct in the District, no matter how injurious, could be immunized by any direct contact with a government instrumentality—which is exactly what Browder is trying to do here.

Browder erroneously argues that the Panel's decision "departs from this Court's prior articulation of the government contacts exception" pre-dating *Environmental Research*. Pet. 14 (citing *Mueller Brass Co. v. Alexander Milburn Co.*, 152 F.2d 142 (D.C. Cir. 1945) and *Fandel v. Arabian Am. Oil Co.*, 345 F.2d 87 (D.C. Cir. 1965)). In particular, he contends that these earlier cases "appl[ied] the government contacts exception based upon the *purpose* of [the corporation-defendant's] office [in the District], and did not ask whether the company's 'sole contact' with the District was communication with federal officials." Pet. 15. The Panel Majority soundly rejected this tendentious gloss, holding that such reasoning

---

association or group located in the District. *See* Appellant Br. at 18-19 & nn. 5-11 (collecting cases).

5

"would mean that a defendant who has even a single contact with the federal government in support of a policy agenda may then exclude *all* contacts with the District that can be somehow construed as efforts to advance that agenda." A20-21. Browder provides no coherent argument to the contrary.

The parallel that Browder attempts to draw between himself and the corporation-defendants in *Fandel* and *Mueller Brass* cannot withstand scrutiny. In those cases, the defendants' reason (or "purpose") for existing was to "gather[] information from Government departments and agencies." *Mueller Brass Co.*, 152 F.2d at 143; *see also Fandel*, 345 F.2d at 88–89 (finding no general jurisdiction where the purpose of defendant's office in the District was to act as "its state department" regarding "the Middle East generally and Saudi Arabia in particular"); *Everett v. Nissan Motor Corp. in U.S.A.*, 628 A.2d 106, 110 (D.C. 1993) (finding no general jurisdiction where defendant's activities in the District were conducted "solely for the purpose of gathering information from the federal government") (citation omitted). Browder cannot credibly maintain that his sole reason for existing is to petition the federal government. Moreover, the parties in those cases were corporations; Browder cites no case supporting applying this logic to individuals.

Additionally, Browder conspicuously omits that the cited cases were about the imposition of general jurisdiction, not specific jurisdiction. *See Mueller Brass Co.*, 152 F.2d at 144 (evaluating whether defendants' activities "constitute[d] doing

6

business in the District of Columbia in the jurisdictional sense"); *Fandel*, 345 F.2d at 88-89 (same). By contrast, here, the issue is whether Akhmetshin has demonstrated that Browder has engaged in a "persistent course of conduct" in the District under the long-arm statute. Unlike general jurisdiction, establishing a "persistent course of conduct" is "not a particularly high bar." A24; *see also Steinberg v. Int'l Criminal Police Org.*, 672 F.2d 927, 931 (D.C. Cir. 1981) (holding that "the 'persistent course of conduct' to which the statute refers denotes connections considerably less substantial than those required to establish general, 'all purpose' jurisdiction on the basis of 'doing business' in the forum"). Akhmetshin has more than met this requirement.

Equally spurious is Browder's argument that his non-governmental activities were not discretionary and only occurred in the District "because the District is the seat of national government." Pet. 7. As Browder notes in his petition, he is more than capable of engaging in interviews "***while he [i]s out of the District***," and, as a result, these discretionary activities must be factored into the jurisdictional analysis. *Id.* (emphasis in original).

Therefore, as the Panel's decision is consistent with this District's and this Circuit's precedents, Browder's petition should be denied. As both the Panel Majority and Dissent agree—and as Browder does not dispute—there is no "controlling authority postdating *Environmental Research International* that applies

7

the government contacts exception to conduct not involving direct contact with members of the federal government or government agencies." A31 (citing A18). This alone is a sufficient basis on which to deny Browder's petition.

## 2. Browder's Argument Regarding the *Noerr-Pennington* Doctrine Should Be Deemed Waived

Browder argues for the first time that the *Noerr-Pennington* doctrine[2] should "defin[e] the scope of the Petition Clause of the First Amendment . . . regarding the government contacts exception." Pet 8–9. This argument should be deemed waived and, in any event, is incorrect as a matter of law, *see infra*.

There is no merit to Browder's novel assertion of a "plain conflict" between the Panel's opinion concerning the government contacts exception's "direct contacts limitation" and the *Noerr-Pennington* doctrine's supposed mandate "that indirect efforts to persuade the federal government, including appeals made via mass media, are entitled to the same protections as advocates' direct government engagements." Pet. 2 (emphasis omitted); *see also id.* 12–14. However "plain" this conflict may now be to Browder, he failed to raise it before the district court or the Panel of this Court. *See* JA[3] 26–78 (Browder's motion to dismiss); Appellee's Br. As this Circuit

---

[2] The *Noerr-Pennington* doctrine immunizes parties "from antitrust liability for engaging in conduct . . . aimed at influencing decisionmaking by the government." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555–56 (2014).

[3] "JA" refers to the Joint Appendix submitted with the original appeal.

has "a well-established rule against allowing parties to initiate new claims on appeal," the Court should decline to consider Browder's new legal argument. *United States v. Naranjo*, 254 F.3d 311, 313 (D.C. Cir. 2001); *see also Chaidez v. United States*, 568 U.S. 342, 358 n.16 (2013) (declining to consider petitioner's new arguments, *inter alia*, because she did not "adequately raise them in the lower courts," but "[o]nly [in] her petition for rehearing en banc").

### 3. Even if the Argument Is Not Waived, the *Noerr-Pennington* Doctrine Is Not Applicable to This Case

Even if the Court is inclined to consider Browder's *Noerr-Pennington* argument, the doctrine is inapplicable for three reasons.

***First***, and most basically, the *Noerr-Pennington* doctrine only applies to antitrust cases. As this Circuit has explained, while the doctrine "is rooted in First Amendment law," it "rests ultimately upon a recognition that *the antitrust laws*, tailored as they are for the business world, are not at all appropriate for application in the political arena." *Andrx Pharm., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 817 (D.C. Cir. 2001) (emphasis added). The Supreme Court has similarly emphasized that, under the *Noerr-Pennington* doctrine, "defendants are immune from *antitrust* liability." *Octane Fitness, LLC*, 572 U.S. at 555–56 (emphasis added).

Browder cites no precedent for an all-purpose application of this doctrine

9

outside of the antitrust context, except in a single footnote.[4] Nor could he; as a panel of this Court has stated, "[t]o our knowledge, [the D.C. Circuit] ha[s] never applied the *Noerr-Pennington* doctrine, which arose in the context of the antitrust laws, to bar liability for common law torts," such as defamation. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1137 n.8 (D.C. Cir. 2015). Therefore, as this action does not involve antitrust liability, the *Noerr-Pennington* doctrine and its interpretation of the Petition Clause are irrelevant.

***Second,*** even if the *Noerr-Pennington* doctrine could be asserted in this action, it is unconnected to the question of personal jurisdiction. As both this Circuit

---

[4] In that footnote, Browder conclusorily states that "[t]he rationale of *Noerr-Pennington* extends beyond antitrust cases to the substantive scope of the Petition Clause right under the First Amendment." Pet. 14 n.4. As an initial matter, the Court should not consider this argument because an oblique "footnote in [an] opening brief . . . is no place to make a substantive legal argument on appeal; hiding an argument there and then articulating it in only a conclusory fashion results in forfeiture." *CTS Corp. v. E.P.A.*, 759 F.3d 52, 64 (D.C. Cir. 2014). Moreover, none of the cases cited by Browder supports extending the *Noerr-Pennington* doctrine beyond the antitrust context. *See, e.g.*, *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499, 503 (1988) (holding that "[c]oncerted efforts to restrain or monopolize trade by petitioning government officials," including "a form of indirect petitioning," are "protected from *antitrust* liability under the doctrine established by *Noerr*") (emphasis added) (internal quotation marks omitted); *Nader v. Democratic Nat. Comm.*, 567 F.3d 692, 696 (D.C. Cir. 2009) (discussing "as an abstract matter" whether "common law torts of malicious prosecution and abuse of process" might fall under the *Noerr-Pennington* doctrine). To the extent that other circuits have expanded the *Noerr-Pennington* doctrine to include "business torts" such as "malicious prosecution, tortious interference with contract, tortious interference with prospective economic advantage, and unfair competition," *see, e.g.*, *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 310 (4th Cir. 2003), such exceptions would not be applicable here.

and the Supreme Court have explained, the *Noerr-Pennington* doctrine is a defense to *liability*, not to a court's exercise of personal jurisdiction. *See, e.g., Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993) (explaining that, under the *Noerr-Pennington* doctrine, "[t]hose who petition government for redress are generally immune from antitrust liability"); *Whelan v. Abell*, 48 F.3d 1247, 1259 (D.C. Cir. 1995) (stating "the *Noerr-Pennington* defense" is "a defense that [the defendant] may prove at trial"). Browder cites no case to support grafting a merits-based, "fact-intensive inquiry that can only be resolved at trial" onto a court's jurisdictional analysis. *United States v. Philip Morris USA, Inc.*, 337 F. Supp. 2d 15, 26–27 (D.D.C. 2004).[5]

***Third***, the *Noerr-Pennington* doctrine does not apply to Browder for the same reason that the government contacts exception does not apply: he is a non-resident alien who voluntarily disavowed the benefits of U.S. citizenship and, therefore, lacks standing to cloak himself in the protection of a doctrine "rooted in the Petition Clause of the First Amendment." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1123 (D.C. Cir. 2009); *see also* A36 ("[I]t is far from clear whether the right to petition the government extends to Browder as a non-citizen.").

---

[5] Moreover, this assumes that Browder's contacts are fairly characterized as "petitioning," which they should not be. *See Allied Tube*, 486 U.S. at 507 (stating *Noerr-Pennington* doctrine should not "immunize what are in essence commercial activities simply because they have a political impact"). Any resolution of this issue would, at a minimum, require jurisdictional discovery.

11

Therefore, as the Panel's decision is consistent with this District's and this Circuit's precedents, the Court should deny Browder's petition for rehearing *en banc*.

**B.     The Petition Does Not Otherwise Present a Question of Exceptional Importance Under Federal Law**

**1.     An *En Banc* Court Cannot Resolve the Remaining State Law Question**

As the Panel correctly held that the government contacts exception is limited to those who seek to influence federal legislation and policy through direct contacts with government officials, the only remaining legal question is "whether the government contacts exception applies to a nonresident alien." A16; *see also* A30. However, as the entire Panel acknowledges, this is purely a question of state law that cannot be resolved by a federal court. *See* A16 ("If the only dispositive legal question outstanding in this case was whether the government contacts exception applies to nonresident aliens, certification to the Court of Appeals likely would be appropriate."); A35 (stating this question "implicates a potential conflict between two decisions of the D.C. Court of Appeals—*a conflict only that court may resolve*" (emphasis added)). In fact, the Supreme Court recently warned federal courts against "[s]peculat[ing]" about "novel issues of state law peculiarly calling for the exercise of judgment by the state courts," *McKesson v. Doe*, 141 S.Ct. 48, 51 (2020) (per curiam) (internal quotation marks omitted), because "the District of Columbia

Court of Appeals could, at any time, speak to the exact issue presented here [and, therefore,] anything this Court could decide through the *en banc* process could be voided immediately," *Barwick v. U.S., Dep't of Interior*, No. 89-5478, 1991 WL 65477, at *1 (D.C. Cir. Mar. 21, 1991).[6]   Therefore, this Court should deny Browder's petition for *en banc* review.

### 2.   Resolution of the State Law Question Would Be Premature

Even if this Court is inclined to resolve the remaining legal question, it would be premature to do so at this juncture.  As the Panel Majority explained, "the wisest course for now is to simply assume, without deciding, that the government contacts exception applies to the contacts of nonresident aliens" because "there are other grounds that might dispose of this case without any need to determine whether the government contacts exception applies to nonresident aliens."  A16.  In particular, should the district court find on remand (after jurisdictional discovery) that it has personal jurisdiction under the D.C. long-arm statute, the constitutional question will be moot.  This holding is consistent with this Circuit's precedent that "[c]ourts should not decide constitutional questions when alternative grounds for decision are

---

[6] While the Panel Dissent is correct that this Court has "previously certified a different question to the D.C. Court of Appeals due to the very uncertainty that *Rose v. Silver*, 394 A.2d 1368 (D.C. 1978)] created," the decision to certify was made by a panel of this Court, not during *en banc* review.  A35 (discussing *Companhia Brasileira Carbureto de Calicio v. Applied Indus. Materials Corp.*, 640 F.3d 369, 371 (D.C. Cir. 2011)).

fairly available." *Al Hela v. Trump*, 972 F.3d 120, 143–44 (D.C. Cir. 2020) (collecting cases); *see also Holmes v. F.E.C.*, 823 F.3d 69, 70 n.1 (D.C. Cir. 2016) (noting that the Court previously remanded case so that the district court could develop "the factual record necessary for *en banc* review"). Therefore, the Court should deny Browder's petition for *en banc* review.

### 3. Browder's "Slippery Slope" Argument Is Unavailing

In an attempt to avoid this Circuit's clear precedents, Browder warns that the Panel's decision presents a slippery slope. In particular, he contends, "[b]ecause nearly all visitors to D.C. engage in *some* nongovernmental contacts during their visits, future plaintiffs will be able to establish jurisdiction by itemizing nonresidents' social visits and commercial transactions (travel, meals, entertainment) that take place during visits to engage with the federal government." Pet. 11–12 (emphasis in original). His purported concern is misplaced. The very purpose of the long-arm statute's "persistent course of conduct" standard is to "filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum." *Crane*, 814 F.2d at 763. But that is not the situation here: in this case, Browder availed himself of the resources of the District of Columbia, appearing repeatedly in person, on television, and on radio to promote his personal brand, strengthen his professional and social network, and protect his substantial personal fortune. This was no "isolated event;" as

14

Browder himself bragged in 2018, he has "had three careers so far," including "a career in Washington." JA 183; 261.

In essence, Browder is arguing that any of his non-governmental activities in the District should automatically convert into protected government contacts once he utters the phrase "Magnitsky Act." In fact, according to Browder, as long as there is a theoretical chance that a lawmaker might be in the same room when he is speaking, happens to watch television at an auspicious moment when he is being interviewed, or attends the same party, he is engaging in "advocacy efforts." Pet. 6–7. The Panel correctly (and soundly) rejected such a nonsensical extension of the government contacts exception, holding it would "swallow the rule." A21. Browder cannot stymie review of his non-government contacts by "uttering magic words." *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 923 F.3d 1141, 1144 (D.C. Cir. 2019) (Pillard, J., dissenting from denial of rehearing *en banc*). He should, therefore, be subject to this District's personal jurisdiction.

## II. THE COURT SHOULD DENY BROWDER'S PETITION FOR PANEL REHEARING

For the reasons stated above, Browder has failed to state "any points of law or fact . . . the court previously overlooked or misapprehended." *Layug*, 1992 WL 311224, at *1. To the extent there are any factual disputes about Browder's non-governmental activities, *see* Pet. 7, they can be resolved by the district court

following jurisdictional discovery.  *See* A25–26.  Therefore, Browder's petition for panel rehearing should also be denied.

## CONCLUSION

For the foregoing reasons, Browder's petition should be denied.


Dated:      February 3, 2021
            New York, New York


                              /s/Michael Tremonte
                              Michael Tremonte
                              Alexandra G. Elenowitz-Hess

                              Sher Tremonte LLP
                              90 Broad Street, 23rd Floor
                              New York, New York 10004
                              (212) 202-2600
                              (fax) 212-202-4156
                              mtremonte@shertremonte.com
                              ahess@shertremonte.com

16

# CERTIFICATE OF COMPLIANCE

This brief complies with Rule 32(a)(7)(B) because it contains 3,768 words, excluding the parts exempted by Rule 32(f) and Circuit Rule 32(c)(1).  This brief also complies with Rule 32(a)(5)-(6) because it is prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.


Dated: February 3, 2021                                     /s/Michael Tremonte
                                                                            Michael Tremonte

**CERTIFICATE OF SERVICE**

I, Michael Tremonte, hereby certify that the foregoing was served on all counsel of record in case number 19-7129 through the electronic filing system (CM/ECF) of the U.S. Court of Appeals for the District of Columbia Circuit.

/s/Michael Tremonte
Michael Tremonte
Sher Tremonte LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
(fax) 212-202-4156
mtremonte@shertremonte.com